**In the Matter of The TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY WITH REGARD TO A PROPOSED PETITION FOR AN AMENDMENT TO THE CONSTITUTION OF the STATE of Colorado ADDING SECTION 2 TO ARTICLE VII (PETITION PROCEDURES),**

**Thomas M. Sutherland and Kenneth P. Katt, Petitioners,**

**and**

**Douglas Campbell and Dennis Polhill, Proponents/Petitioners,**

**and**

**Victoria Buckley, Stephen ErkenBrack, and Rebecca Lennahan, Title Board.**

**No. 95SA149.**

Supreme Court of Colorado, En Banc.

June 30, 1995.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Maurice G. Knaizer, Deputy Atty. Gen., Denver, for title board.

Douglas Campbell and Dennis Polhill, Arvada, pro se.

Susan E. Burch, Denver, for petitioners.

Justice KIRSHBAUM delivered the Opinion of the Court.

Petitioners Douglas Campbell and Dennis Polhill (the proponents), and petitioners Thomas M. Sutherland and Kenneth P. Katt (the objectors) challenge the action of the initiative title setting board (the Board) in setting the title, ballot title and submission clause, and summary for a proposed amendment to Article VII of the Colorado Constitution designated "Petition Procedures" (the Initiative). We reverse the action of the Board.

The Initiative contains provisions affecting the nature of the rights of initiative, referendum, and recall and altering the procedures for the exercise of such rights; provides that charter or constitutional petitions approved after 1990 shall create fundamental rights; authorizes individual or class action suits to enforce the Initiative; authorizes awards of costs to successful plaintiffs who enforce such petitions by means of civil litigation and to defendants if such civil actions are frivolous; and establishes certain common law standards for judicial interpretation and construction of such petitions. The text of the Initiative is attached hereto as APPENDIX A. The text of the title, ballot title and submission clause, and summary as prepared by the Board are attached hereto as APPENDIX B.

The objectors argue that the Initiative impermissibly encompasses more than a single subject and that the title selected by the Board is not a clear, concise summary of the Initiative. We agree.

I

On April 5, 1995, the proponents submitted the Initiative to the Secretary of State and on April 19, 1995, the Board set a title, ballot title and submission clause, and summary for the Initiative. On April 26, 1995, the objectors filed a motion for rehearing, pursuant to section 1–40–107(1), 1B C.R.S. (1994 Supp.), alleging that the Initiative did not conform to the single subject requirements of article V, section 1(5.5) of the Colorado Constitution; that the title, ballot title and submission clause, and summary did not correctly and fairly express the true intent and meaning of the proposal; that the title, ballot title and submission clause, and summary were misleading; and that the Board lacked jurisdiction under section 1–40–106(1), 1B C.R.S. (1994 Supp.), to fix a proper title. On April 26, 1995, the proponents also filed a motion for rehearing arguing that the title, ballot title and submission clause, and summary did not fairly express the true meaning and intent of the proposed amendment and were not concise and impartial. On May 3, 1995, at the conclusion of a hearing on the motions, the Board denied both motions for rehearing.

On May 5, 1995, the proponents, pursuant to section 1–40–107, 1B C.R.S. (1994 Supp.), timely filed a petition in this court requesting review of the Board's action. On May 8, 1995, the objectors also filed a petition in this court requesting review of the Board's action. We will consider both petitions in this proceeding.

## II

■ Article V, section 1 of the Colorado Constitution reserves to the registered electors of the state of Colorado the right to initiate constitutional amendments. The single subject requirement for initiatives was approved by the electorate in the 1994 general election ballot and provides, in pertinent part, as follows:

No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed. If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls....

Colo. Const. art. V, § 1(5.5); *see* Senate Concurrent Resolution 93-4, 1993 Colo.Sess. Laws 2152. In 1994, the General Assembly enacted section 1-40-106.5, 1B C.R.S. (1994 Supp.), setting forth the legislative declaration regarding the single-subject requirements for initiated measures and referred constitutional amendments. Such section provides as follows:

**Single-subject requirements for initiated measures and referred constitutional amendments—legislative declaration.** (1) The general assembly hereby finds, determines, and declares that:

(a) Section 1(5.5) of article V and section 2(3) of article XIX of the state constitution require that every constitutional amendment or law proposed by initiative and every constitutional amendment proposed by the general assembly be limited to a single subject, which shall be clearly expressed in its title.

(b) Such provisions were referred by the general assembly to the people for their approval at the 1994 general election pursuant to Senate Concurrent Resolution 93-4.

(c) The language of such provisions was drawn from section 21 of article V of the state constitution, which requires that every bill, except general appropriation bills, shall be limited to a single subject, which shall be clearly expressed in its title.

(d) The Colorado supreme court has held that the constitutional single-subject requirement for bills was designed to prevent or inhibit various inappropriate or misleading practices that might otherwise occur, and the intent of the general assembly in referring to the people section 1(5.5) of article V and section 2(3) of article XIX was to protect initiated measures and referred constitutional amendments from similar practices.

(e) The practices intended by the general assembly to be inhibited by section 1(5.5) of article V and section 2(3) of article XIX are as follows:

(I) To forbid the treatment of incongruous subjects in the same measure, especially the practice of putting together in one measure subjects having no necessary or proper connection, for the purpose of enlisting in support of the measure the advocates of each measure, and thus securing the enactment of measures that could not be carried upon their merits;

(II) To prevent surreptitious measures and apprise the people of the subject of each measure by the title, that is, to prevent surprise and fraud from being practiced upon voters.

(2) It is the intent of the general assembly that section 1(5.5) of article V and section 2(3) of article XIX be liberally construed, so as to avert the practices against which they are aimed and, at the same time, to preserve and protect the right of initiative and referendum.

(3) It is further the intent of the general assembly that, in setting titles pursuant to section 1(5.5) of article V, the initiative title setting review board created in section 1-40-106 should apply judicial decisions construing the constitutional single-subject requirement for bills and should follow the same rules employed by the general assembly in considering titles for bills.

§ 1-40-106.5, 1B C.R.S. (1994 Supp.).

■ In order to aid the electors in the exercise of the right to initiate constitutional

amendments, the Board has the duty to designate and fix a title, a ballot title and submission clause, and a summary for initiated petitions before they are signed by electors. *In re Proposed Initiative on Sch. Pilot Program,* 874 P.2d 1066, 1069 (Colo.1994). The purpose of the title setting process is to ensure that persons reviewing the initiative petition and voters are fairly advised of the import of the proposed amendment. *Id.* at 1070.

The title, ballot title, and submission clause of a proposed constitutional amendment must fairly express the true intent and meaning of that amendment. § 1–40–106, 1B C.R.S. (1994 Supp.). The title must consist of a brief statement accurately reflecting the meaning of the proposed initiative. *In re Proposed Initiative on Sch. Pilot Program,* 874 P.2d at 1069. The Board must "consider the public confusion that might be caused by misleading titles and shall, whenever practicable, avoid titles for which the general understanding of the effect of a 'yes' or 'no' vote will be unclear." *Id.* The Board must also prepare an impartial summary of the proposed amendment, one not likely to create prejudice either for or against the proposal. § 1–40–106(3)(b), 1B C.R.S. (1994 Supp.).

Every constitutional amendment proposed by initiative must pertain only to a single subject. Colo. Const. art. V, § 1(5.5); Colo. Const. art. XIX, § 2(3); § 1–40–106.5, 1B C.R.S. (1994 Supp.). Such single subject must be clearly expressed in the title set by the Board. § 1–40–106.5, 1B C.R.S. (1994 Supp.). This single subject requirement is designed to protect voters against fraud and surprise and to eliminate the practice of combining several unrelated subjects in a single measure for the purpose of enlisting support from advocates of each subject and thus securing the enactment of measures which might not otherwise be approved by voters on the basis of the merits of those discrete measures. *Id.* A proponent of an initiated measure or a registered elector who believes a title, ballot title and submission clause, or summary fixed by the Board does not fairly express the true intent of the proposal may file a motion with the Board for a rehearing

on the matter and, if such motion is denied, may request review of the Board's action by this court. § 1–40–106(1), 1B C.R.S. (1994 Supp.); *In re Proposed Initiative on Sch. Pilot Program,* 874 P.2d at 1070.

Our scope of review of the Board's exercise of discretion is limited. In *In re Proposed Initiative on School Pilot Program* we made the following pertinent observations:

> Our duty is to ensure that the title, ballot title and submission clause, and summary fairly reflect the proposed initiative so that petition signers and voters will not be misled into support for or against a proposition by reason of the words employed by the Board.

*In re Proposed Initiative on Sch. Pilot Program,* 874 P.2d at 1070 (citations omitted). In conducting such review we will engage in all legitimate presumptions in favor of the propriety of the Board's actions. *In re Proposed Initiative "Auto. Ins. Coverage",* 877 P.2d 853, 856 (Colo.1994). The language employed by the Board in fixing a title will be rejected only if it is misleading, inaccurate, or fails to reflect the central features of the proposed initiative. *Id.*

### III

### A

The objectors initially contend that the Board was improperly constituted because a deputy attorney general rather than the attorney general presided at the hearings. We reject this argument. The authority of the attorney general to designate a deputy authorized to act for the attorney general in all matters except for such duties as devolve upon the attorney general by virtue of the state constitution is established in section 24–31–103, 10B C.R.S. (1994 Supp.). Because attendance at the Board's hearings is imposed on the attorney general by virtue of section 1–40–106(1), 1B C.R.S. (1994 Supp.), a deputy attorney general may conduct such hearings in lieu of the attorney general.

## B

■■■■■ The objectors argue that the Initiative does not contain a single subject and that the title adopted by the Board does not contain a clear, concise summary of the Initiative. We agree.

A petition includes more than one subject if its text relates to more than one subject and has at least two distinct and separate purposes which are not dependent upon or connected with each other. *See People v. Sours*, 31 Colo. 369, 405, 74 P. 167, 178 (1903) (interpreting the single subject requirement for bills); § 1–40–106.5(1)(e)(I), 1B C.R.S. (1994 Supp.). The most cursory examination of the text of the Initiative reveals that it includes several subjects. For example, it establishes the retroactive creation of substantive fundamental rights in all charter or constitutional petitions approved after 1990. It provides that in construing the effect of such petitions courts must in all cases consider the word "shall" as a mandatory command, regardless of whether the context might otherwise indicate. It establishes standards for judicial review of filed petitions, requiring "strictest scrutiny and full enforcement" of violations of such petitions, and provides that challenges to petitions on single-subject or ballot title grounds can be upheld "only if beyond a reasonable doubt to a unanimous supreme court." In addition, the Initiative contains numerous and varied procedural and substantive provisions relating to recall, referendum, and initiative petitions. The Colorado Constitution treats these different citizen initiated measures in separate sections. *See* Colo. Const. art. V, §§ 1, 3 (referendum); Colo. Const. art. XXI, § 2 (recall); Colo. Const. art. V, §§ 1, 2 (initiative). In our view, the Initiative violates the constitutional and statutory single subject requirements.

## C

■■■■■ In view of the fact that the Initiative encompasses several diverse subjects, it is not surprising that the title adopted by the Board fails to provide a clear, concise summary of the Initiative. For example, the title "Petition Procedures" fails to convey the fact that the Initiative creates numerous "fundamental rights" retroactive to 1990 unrelated to any procedural changes. The title provides no summary of the cost provisions contained in the Initiative and does not set out the differing substantive and procedural provisions regarding recall, referendum, or initiative petitions.[1] The title is inadequate.

## IV

For the foregoing reasons, we hold that the Initiative encompasses more than a single subject and that the title selected by the Board is not a clear, concise summary of the Initiative. Thus, the Board erred in setting the title for the Initiative. We remand this matter to the Board with directions to strike the title, ballot title and submission clause, and summary and to return the Initiative to its proponents.

SCOTT, J., concurs.

### APPENDIX A

Be it Enacted by the People of the State of Colorado: Article VII, section 2

**(1) General provisions.** The required application of this section shall strengthen citizen control of government the most. All parts shall be self-executing and severable and supersede conflicting constitutional, statutory, charter, or other state or local laws. Individual or class action suits shall be filed within one year of a violation. Charter or constitutional petitions approved after 1990 shall create fundamental rights and their use of "shall" means mandatory. Their time limits shall extend only to expire on a district business day. Successful plaintiffs enforcing such petitions shall receive from a district all costs paid on their behalf and attorney fees, contingent or not, but defendants only if a suit be frivolous. Violations of such petitions shall not be balanced away or harmonized, nor excused by substantial compliance, but shall require strictest scrutiny and full en-

1. The objectors also challenge the ballot title and submission clause and the summary prepared by the Board. In view of our disposition above, we need not reach these contentions.

forcement unless doing so would invalidate a future proposed petition.

**(2) Term definitions.** **(a)** "Ballot title" means all language on a state or local ballot describing a specific petition.

**(b)** "District" means the state or any local government, including enterprises, authorities, and other governmental entities.

**(c)** "Elective officer" means any person subject to recall under Article XXI.

**(d)** "Petition" means a recall, or a citizen-sponsored referendum or initiative on district legislative policy, which excludes the application of administrative procedures to specific situations.

**(3) Petition rights.** **(a)** Petition rights shall exist in all districts. Required district registered elector petition entries shall equal 5% of all district votes for secretary of state candidates in the last general election for that office, except 8% in an elective officer's area for a recall. Required petition entries may be reduced for petitions that are not charter or constitutional amendments. Initiative ballot titles shall not exceed 100 words. They shall be set within 7 days of a request and may also be set by any state district court. Public comment shall be allowed, but not a summary or fiscal note. Such ballot titles and all challenges to petitions on single-subject grounds shall be appealed to the supreme court only within 5 days of the setting and finally decided only within 14 days of the appeal. Ballot titles or petitions shall be found to violate single-subject provisions, broadly construed to aid petitions, only if beyond a reasonable doubt to a unanimous supreme court. Within 8 days of a final decision or of a request for recall or referendum petition forms, districts shall print and deliver requested petition forms and may charge up to one dollar per 100–entry petition form. All districts shall adapt the 1988 state petition forms with no space or listing required for a county. Errors in petition forms or ballot titles shall not affect petitions. Peaceful petitioning on district-owned property then open to public passage shall not be limited. Except for petition form charges, no petition process fee, card,

badge, bond, licensing, or training for petition agents or circulators shall be required. The use of paid circulators shall not create extra legal duties.

**(b)** No more than 9 legislative measures passed without voter approval in a district in any year shall be excepted from possible referendum petitions, and those measures only if passed by a ¾ths vote of all members of the local board or of each house of the general assembly. Appropriations for district support are exempt from referendum petitions. No measure shall be fully or partly passed again, even with an exception, while a referendum petition on it is in progress. State measures open to a referendum petition shall take effect 91 days or more after that general assembly session finally adjourns, and such local measures 91 days or more after post-passage publication. Only an initial filing of petitions by the 90th day after such event shall delay the effective date until the election or final petition invalidation. If voters reject such a measure, it shall be fully or partly enacted in the next 8 years only with voter approval. Referendum petition ballot titles shall read, "SHALL (DISPUTED SECTIONS OF) (type of measure and number only) BE APPROVED?" Such petitions shall not have a title-setting hearing or appeal of any single-subject challenge.

**(c)** Petitions shall be initially filed within 9 months of petition form delivery. Non-recall petitions initially filed less than 3 months before an election shall carry forward to the next election. Signers of petitions later notarized or verified shall be presumed district registered electors making valid petition entries until disproven beyond a reasonable doubt. Technical defects and minor variations shall be broadly construed to aid petitions. Listing a mailing address shown on the signer's registration record shall be valid. Protests shall be filed within 15 days of petition filing and not amended. Hearings shall be public, limited to reasons itemized in the protest, and use judicial rules of evidence and procedure. Random sampling or machine reading of entries shall be inadmissible. Petitioners shall have 15 days after all validation procedures and appeals to file corrections and new petition entries made at any

time, to which all validation procedures and appeals shall also apply. Third filings are barred. When initially filed, petitions shall receive a ballot number and ballot placement which remain during all such procedures and appeals.

(d) Elective officers may undergo only one recall election every 4 years. Recall ballots shall allow 300 words to each side for comments. Districts shall not repay any recall campaign costs. All local non-recall petitions shall be Article X, section 20(3) ballot issues. All state non-recall petitions shall be voted on at any state ballot issue election. State non-recall petition agents shall be allowed to file up to 500 words for ballot information booklets, which shall be sent to addresses of all active registered electors. That filing shall be the maximum length for a summary of comments filed in opposition. Booklet analysis of such petitions shall be limited to written comments filed by 45 days before the election and other information required by Article X, section 20(3)(b). Unless otherwise stated in the petition or unless its text be unlawful, a future voter-approved petition shall remain in effect until changed by voters at a later election. Referred measures to amend, supersede, or repeal charter or constitutional petitions approved after 1900 shall require a ¾ths vote of all members of the local board or of each house of the general assembly. Except measures passed by March 1, 1997, that are subject to possible referendum petitions, future state or local petition laws, rules, or regulations shall require advance district voter approval.

## APPENDIX B

### Proposed Initiative on: "PETITION PROCEDURES"

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING THE PETITION PROCESS, AND, IN CONNECTION THEREWITH, MAKING CHANGES IN INITIATIVE, REFERENDUM, AND RECALL RIGHTS AND PROCEDURES, EXTENDING PETITION POWERS TO REGISTERED VOTERS OF ALL LOCAL GOVERNMENTS, LIMITING INITIATIVE BALLOT TITLES TO 100 WORDS, ESTABLISHING STANDARDS FOR REVIEW OF FILED PETITIONS, REVISING OTHER PROCEDURAL AND SUBSTANTIVE PETITION PROVISIONS FOR THE INITIATIVE, REFERENDUM, AND RECALL, LIMITING THE ANNUAL NUMBER OF BILLS THAT GOVERNMENTS MAY EXCLUDE FROM REFERENDUM BY PETITION, REQUIRING VOTER APPROVAL TO CHANGE CERTAIN FUTURE VOTER–APPROVED PETITIONS, REQUIRING VOTER APPROVAL OF FUTURE PETITION LAWS OR REGULATIONS, AND AUTHORIZING INDIVIDUAL OR CLASS ACTION SUITS TO ENFORCE THE AMENDMENT.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING THE PETITION PROCESS, AND, IN CONNECTION THEREWITH, MAKING CHANGES IN INITIATIVE, REFERENDUM, AND RECALL RIGHTS AND PROCEDURES, EXTENDING PETITION POWERS TO REGISTERED VOTERS OF ALL LOCAL GOVERNMENTS, LIMITING INITIATIVE BALLOT TITLES TO 100 WORDS, ESTABLISHING STANDARDS FOR REVIEW OF FILED PETITIONS, REVISING OTHER PROCEDURAL AND SUBSTANTIVE PETITION PROVISIONS FOR THE INITIATIVE, REFERENDUM, AND RECALL, LIMITING THE ANNUAL NUMBER OF BILLS THAT GOVERNMENTS MAY EXCLUDE FROM REFERENDUM BY PETITION, REQUIRING VOTER APPROVAL TO CHANGE CERTAIN FUTURE VOTER–APPROVED PETITIONS, REQUIRING VOTER APPROVAL OF FUTURE PETITION LAWS OR REGULATIONS, AND AUTHORIZING INDIVIDUAL OR CLASS ACTION SUITS TO ENFORCE THE AMENDMENT?

The summary prepared by the Board is as follows:

This measure extends the petition powers to the residents of all local governments and prohibits infringing the right to petition peaceably on public property. The measure limits the number of signatures required for petitions. Initiative ballot titles are limited to 100 words, must be set within 7 days, and no longer require a summary or fiscal note. A title may also be set by a state district court. Ballot title and single-subject challenges to petitions must be filed with the supreme court within 5 days of title setting, and the decision must be rendered within 14 days of the appeal. State and local governments are required to print and deliver requested petition forms, but may charge up to $1.00 per 100–entry petition form. Except for petition form charges, no petition process fee, card, badge, bond, licensing, or training may be required for petition agents or circulators.

The measure limits state and local governments to 9 bills each year that can be excepted from referendum by petition, and requires a ¾ths vote of all members of the local board or of each house of the general assembly for such exception. State measures that are subject to referendum by petition may take effect no sooner than 91 days after adjournment of the general assembly, and local measures no sooner than 91 days after final publication. Referendum petitions are excluded from title-setting procedures or any single-subject challenge, and the wording of referendum petition ballot titles is specified.

The measure requires that petitions be filed within 9 months of petition form delivery, and specifies that non-recall petitions that are filed less than 3 months before an election carry forward to the next election. Any person signing a petition is presumed to be a registered voter whose entry is valid until disproven beyond a reasonable doubt. Technical defects and minor variations are broadly construed to aid petitions. A person signing a petition is no longer required to list his or her county of residence. Protest hearings are public, are limited to reasons itemized in the protest, and are conducted using judicial rules of evidence and procedure. The results of any random sampling or machine reading of petition entries are inadmissible. The measure imposes a schedule to resolve protests and appeals and to allow petitioners to file corrections and new petition entries. When initially filed, petitions will receive a ballot number and ballot placement that remain during all such procedures and appeals.

The measure allows elective officers to undergo only one recall election every 4 years, and limits the comments by proponents and opponents on recall ballots to 300 words to each side. State and local governments are not allowed to repay any recall campaign costs. All local non-recall petitions must be Article X, Section 20(3) ballot issues, and all state non-recall petitions must be voted on at any state ballot issue election. The comments filed by state non-recall petition proponents and opponents are limited to 500 words for ballot information booklets. Booklet analysis of such petitions is limited to written comments filed by 45 days before the election and other information required by Article X, Section 20(3)(b).

The measure requires, with exceptions, voter approval to amend a voter-approved initiative, a ¾ths vote of all members of the general assembly or local governing body to refer to the voters a measure to amend, supersede, or repeal an initiated constitutional or charter amendment approved after 1990, and voter approval for future state or local petition laws, rules, or regulations.

The measure authorizes individual or class action lawsuits to enforce the amendment, and allows attorney fees and costs to successful plaintiffs but to defendants only if the action is deemed frivolous.

The requirement that a "district" pay all costs associated with legal actions brought by successful plaintiffs enforcing petitions could result in a negative fiscal impact on governmental entities depending on the number of actions filed and the number of decisions in favor of plaintiffs. For example, the Office of State Planning and Budgeting estimates that two title board cases and two signature verification cases successfully litigated by plaintiffs would cost the state $38,000.

The elimination of a fiscal note and summary on initiatives would result in a savings of $15,000 to the state.

The measure would result in additional cost to the state and local districts for printing and delivering the requested petition forms, although the cost may be offset by allowing the district to charge up to $1 for every 100–entry petition form.

The elimination of the current random sample verification of petition signatures would result in an estimated additional cost of $10,000 to the state for each petition. Based on an estimated 30 initiatives annually, the current budgeted level would need to increase by $300,000. In addition, a one-time cost of computer reprogramming and additional disk space for the addition of mailing addresses as well as residency addresses is estimated to cost $30,000.

The provision that allows only 9 legislative measures to be exempted from the referendum could reasonably result in more referendum petitions at an estimated cost of $25,000 for each ballot issue.

The measure provides easier access to the ballot, which could result in additional ballot proposals at an estimated cost of $25,000 for each measure.

The elimination of the requirement that units of government repay campaign and other costs of an unsuccessful recall election could result in a positive fiscal impact, depending on the number of unsuccessful recalls. Lowering the current number of petition signatures for recall of a state officer from 25% of the entire vote cast for all candidates for that office in the preceding election to 8% of the total vote cast for secretary of state may lead to additional recall efforts, but the fiscal impact of that change is indeterminate.

4/19/95 Hearing

Adjourned 4:32 p.m.

5/3/95 Rehearing Denied

Adjourned 2:50 p.m.

Justice SCOTT, concurring:

I join the majority opinion in its entirety. I write separately only to make clear my view that our decision today recognizes the fundamental right of citizen initiative and referendum. *Loonan v. Woodley,* 882 P.2d 1380, 1383–84 (Colo.1994). In my view, by our judgment today, we do not ignore the fact that so long as an initiative encompasses *related* matters it does not violate the single subject requirement of our state constitution. If the matters encompassed in the initiative are necessarily or properly connected to each other rather than disconnected or incongruous, the single subject requirement is not violated. *Parrish v. Lamm,* 758 P.2d 1356, 1362 (Colo.1988).

Moreover, by our opinion today, we do not avoid our duty to liberally and reasonably interpret citizen initiatives so that we do not unnecessarily obstruct the use of initiatives by citizens who elect to exercise this important fundamental right. However, even a liberal construction of this initiative cannot cure its infirmities.