2014 CO 52

**In the MATTER OF the TITLE, BALLOT TITLE, AND SUBMISSION CLAUSE FOR 2013–2014 #76**

**Philip Hayes, Petitioner**

v.

**Mike Spalding and Natalie Menten, Respondents**

and

**Suzanne Staiert, Daniel Domenico, and Jason Gelender, Title Board.**

**Supreme Court Case No. 14SA105**

Supreme Court of Colorado.

June 23, 2014

pursued this appeal.

Attorneys for Petitioner: Recht Kornfeld, P.C., Mark G. Grueskin, Denver, Colorado.

Attorneys for Ballot Title Board: John W. Suthers, Attorney General, Sueanna P. Johnson, Assistant Attorney General, Denver, Colorado, Natalie Menten, Pro Se, Lake-

wood, Colorado, Mike Spalding, Pro Se, Littleton, Colorado.

JUSTICE HOBBS delivered the Opinion of the Court.

¶ 1 In this case reviewing the action of the Title Board setting a title for a proposed initiative, we hold that Proposed Initiative for 2013–2014 # 76 relates to more than one subject and has at least two distinct and separate purposes that are not dependent upon or necessarily and properly connected with each other, in violation of article V, section 1(5.5), of the Colorado Constitution.[1]

¶ 2 Initiative # 76 would repeal existing article XXI of the Colorado Constitution in its entirety. Currently, article XXI sets forth provisions for recalling state and local elected officers. Initiative # 76 proposes to comprehensively revamp article XXI's recall provisions, for the purpose of altering the manner in which state and local recall elections are triggered and conducted. Initiative # 76 has a second purpose, to establish a new constitutional right to recall non-elected state and local officers. Historically, Colorado law has provided only for the recall of elected officers. The initiative's second subject has a distinct and separate purpose from its first subject. Because the second subject has a purpose that is not dependent upon or necessarily and properly connected to the first, we conclude that Initiative # 76 proposes more than a single subject in violation of article V, section 1(5.5) of the Colorado Constitution.

¶ 3 Accordingly, we reverse the Title Board's action and return this matter to it with directions to strike the title and return the initiative to its proponents.

## I.

¶ 4 Proposed by registered electors Mike Spalding and Natalie Menten, Proposed Initiative for 2013–2014 # 76 seeks to repeal and replace the existing manner of triggering and conducting a recall election under Colorado Constitution article XXI and also

institute a new constitutional right to recall state and local non-elected officers. The Title Board set a title and submission clause for this initiative. Registered elector Philip Hayes objected to the Title Board's action. He filed a motion for rehearing on grounds that the initiative contained multiple subjects in violation of article V, section 1(5.5), of the Colorado Constitution. The Title Board modified the title and submission clause in response to two of Hayes' objections but otherwise denied the motion for rehearing. It ruled that the initiative contains only a single subject, "the recall of government officers." It then finalized the title and submission clause for Initiative # 76. Hayes appealed the Title Board's action to us pursuant to section 1–40–107, C.R.S. (2013).

¶ 5 The proponents of the initiative and the Title Board contend that the initiative, the title, and the submission clause address only a single subject in compliance with constitutional, statutory, and case law requirements. We disagree. We agree with Hayes that the initiative unconstitutionally proposes multiple subjects and the Title Board acted unconstitutionally in setting a title for it.

## II.

¶ 6 We hold that Initiative # 76 relates to more than one subject and has at least two distinct and separate purposes that are not dependent upon or necessarily and properly connected with each other, in violation of article V, section 1(5.5), of the Colorado Constitution.

### A. Standard of Review

 ¶ 7 In 1994, Colorado's electorate approved a referendum that extended the single subject/clear title limitation applicable to bills to proposed initiatives. *In re Proposed Initiative for 1999–2000 # 25*, 974 P.2d 458, 463 n. 4 (Colo.1999). "[A] proposed initiative contains multiple subjects not only when it proposes *new* provisions constituting multiple subjects, but also when it proposes to *repeal*

---

1. See the appendix to this decision for the text of Initiative # 76 and the title and submission clause the Title Board adopted for the ballot.

multiple subjects." *In re Proposed Initiative for 1999–2000 # 104,* 987 P.2d 249, 254 (Colo.1999) (emphasis in original). The legislature has assigned to us the duty of reviewing whether the Title Board has discharged its responsibilities in accordance with the applicable law. § 1–40–107; *see also Id.*

¶ 8 Our function is limited to determining whether the contested language within the initiative creates a distinct and separate subject which is not connected to or dependent upon the remaining aspects of the initiative. *Id.* at 258. In reviewing a challenge to the Title Board's single subject determination, we employ all legitimate presumptions in favor of the Title Board's actions; we will only overturn the Title Board's finding that an initiative contains a single subject in a clear case. *In re Proposed Initiative for 2011–2012 # 45,* 274 P.3d 576, 579 (Colo.2012). The subject matter of an initiative must be necessarily and properly connected rather than disconnected or incongruous. *Id.* We do not determine the initiative's efficacy, construction, or future application. *See In re Proposed Initiative for 2009–2010 # 91,* 235 P.3d 1071, 1076 (Colo.2010). But, like the constitutional single subject requirement for bills passed by the General Assembly, the single subject limitation applicable to initiatives prevents the proponents from combining multiple subjects to attract a "yes" vote from voters who might vote "no" on one or more of the subjects if they were proposed separately. *In re Proposed Initiative for 1997–1998 # 84,* 961 P.2d 456, 458 (Colo.1998). We must sufficiently examine an initiative to determine whether or not it violates the constitutional prohibition against initiative proposals containing multiple subjects. *Id.*

¶ 9 We begin our analysis in this case by examining the proponents' and Title Board's fundamental error in assuming that article XXI currently provides for the recall of both non-elected and elected officers. We then address sections 2 and 3 of Initiative # 76. We conclude that these sections propose new recall petition, election, and vacancy provisions, for the purpose of altering the requirements for triggering and conducting state and local recall elections. These provisions would repeal, replace, and preempt multiple but unspecified existing constitutional, statutory, and home rule charter provisions. These changes to the existing recall process constitute at least one subject. Then, we turn to the initiative's section 1. We conclude that it proposes to institute a new constitutional right to recall non-elected officers, in addition to elected officers. This is a second subject with a distinct and separate purpose not dependent upon or connected to the first subject.

¶ 10 The proponents attempt to unite these separate subjects under the description "recall of government officers" in the title and submission clause. We have previously found such umbrella proposals unconstitutional. For example, we have rejected attempts to pass disparate proposals with common themes such as "water," *In re Public Rights in Waters II,* 898 P.2d 1076, 1080 (Colo.1995), or "revenue changes," *In re Amend TABOR 25,* 900 P.2d 121, 125–26 (Colo.1995). Such initiatives combine proposals that voters might favor with those they would otherwise oppose, in order to achieve passage. *See In re Proposed Initiative for 2005–2006 # 55,* 138 P.3d 273, 282 (Colo.2006). To avert such mischief, the single subject requirement limits the voters to answering "yes" or "no" to a straightforward, single subject proposal. *See In re Petition Procedures,* 900 P.2d 104, 108 (Colo.1995). In the case before us, some voters might favor altering the requirements or procedures for recalling elected officers but not favor establishing a new constitutional right to recall non-elected officers, or vice-versa. Initiative # 76 unconstitutionally combines the two subjects in an attempt to attract voters who might oppose one of these two subjects if it were standing alone.

¶ 11 We turn first to the assertion that article XXI currently provides for the recall of non-elected officers.

**B. Article XXI Currently Provides Only a Right to Recall Elected Officers**

¶ 12 In their briefs to us, the proponents and the Title Board argue that Initiative # 76 deals with a single subject: "the recall of government officers." In making this con-

tention, they assert that the right to recall non-elected officers is already contemplated by article XXI. For this proposition, they cite our decision in *Groditsky v. Pinckney*, 661 P.2d 279 (Colo.1983). However, they misconstrue our decision in *Groditsky* and, most significantly, they misread article XXI. Article XXI, sections 1 and 4, provide only that elected state and local officers are subject to recall.

¶ 13 Article XXI, section 1, provides:

*Every elective public officer of the state* of Colorado *may be recalled* from office at any time by the registered electors entitled to vote for a successor of such incumbent through the procedure and in the manner herein provided for, which procedure shall be known as the recall, and shall be in addition to and without excluding any other method of removal provided by law.

(Emphasis added).

Article XXI, section 4, provides:

*The recall may also be exercised* by the registered electors of each county, city and county, city and town of the state, *with reference to the elective officers thereof,* under such procedure as shall be provided by law.

. . . .

Every person having authority to exercise or exercising any public or governmental duty, power or function, shall be an elective officer, or one appointed, drawn or designated in accordance with law by an elective officer or officers, or by some board, commission, person or persons legally appointed by an elective officer or officers, each of which *said elective officers shall be subject to the recall provision of this constitution*[.]

(Emphasis added). As the underscored language demonstrates, article XXI provides for a recall right that is specifically limited to "elective officers." Section 4 only refers to "appointed" persons in providing that persons who "exercise . . . any public or governmental duty, power, or function" must be either elected officers themselves or persons "legally appointed by an elective officer or officers" or "by some board, commission, person or persons" that has been "legally ap-pointed" by an elected officer or officers. The recall provision of section 4 does not apply to local non-elected officers.

¶ 14 Indeed, *Groditsky* involved the recall of elected members of a special district board in accordance with section 32–1–906, C.R.S. (1973 & Supp.1982), not appointed officers. 661 P.2d at 280 n. 1 (citing pertinent statute providing that "Any director elected to the board of any special district who has actually held his office for at least six months may be recalled from office by the electors of the special district"). The two elected directors of the Bancroft Fire Protection District subject to recall in that case claimed that the recall procedure authorized by section 32–1–906, C.R.S. (1973), was unconstitutional. *Id.* at 280 (also describing the directors' other claims). We disagreed. We held that section 32–1–906 was the type of enabling legislation that article XXI, section 4, expressly authorizes to facilitate the recall of elected officers. *Groditsky,* 661 P.2d at 281 (citing section 4's provision that "the recall may be exercised by the electors of each county, city and county, city and town of the state, with reference to the *elective officers* thereof, under such procedure as shall be provided by law") (emphasis added).

¶ 15 In summary, under existing article XXI, the right of recall is limited to elected officers and does not apply to non-elected officers. Colo. Const. art. XXI, § 1 (*"Every elective public officer* of the state of Colorado may be recalled from office . . . by the registered electors entitled to vote for a successor of such incumbent . . . .") (emphasis added); Colo. Const. art. XXI, § 4 (*"The recall may also be exercised by the registered electors* of each county, city and county, city and town of the state, with reference to the elective officers thereof, under such procedure as shall be provided by law.") (emphasis added). Consistent with article XXI, sections 1 and 4, the General Assembly limited the right of recall to state and local elected officers in its implementing statutes. § 1–12–101, C.R.S. (2013) (*"Every elected officer of this state or any political subdivision thereof is subject to recall* from office at any time by the eligible electors entitled to vote for a

successor to the incumbent.") (emphasis added).

¶ 16 We now turn to Initiative # 76's two subjects.

## C. New Provisions for State and Local Recall Petitions and Elections

¶ 17 In repealing in its entirety article XXI of Colorado's Constitution, Initiative # 76's first subject proposes to substitute substantial changes to the manner in which state and local recall elections are triggered and conducted under current constitutional and statutory law. Section 2 of the initiative includes new provisions that provide, in part, that:

(1) five registered electors eligible to vote on the recall may file at any time a signed request to recall certain state or local elective or non-elective officers;

(2) no government shall detain, stop, cite, or arrest petition circulators or signers for or while peacefully petitioning;

(3) statewide petition entries shall be filed within 180 days of sample petition section delivery, and local petition entries within ninety days, with one thirty-day extension to file added entries at any time from the date a decision of invalidity is entered;

(4) *the required number of valid petition entries shall be the lesser of 5 percent of active registered voters in the recall area or 100,000 such entries;*

(5) within twenty days of filing, the election official shall count, examine, itemize, and report entries for validity; and within ten days of that report, recall filers and the officer may each file without a fee a protest to the supreme court for its review of disputed entries; and the supreme court shall conduct its review and issue its results with thirty days of the protest filing;

(6) recall elections shall be held on a Tuesday within sixty days of the last validation decision, *but statewide elections shall be in November only;*

(7) ballots shall list candidates nominated to complete the term; the officer being recalled shall be ineligible; *the required number of valid petition entries shall be the lesser of 1 percent of active registered electors in the recall area or 10,000 such entries;* entries shall be filed by ten days after the earlier of the first recall entry filing or a recall stopped as provided above;

(8) successors shall be installed at once; *with no successor, a vacancy is filled by like means in the next November election at least ninety days* later; and non-elective officer vacancies are filled by appointment.

Section 3 of the initiative includes new enforcement provisions that provide, in part, that:

(1) *no law, rule, or court shall prohibit, regulate, or limit recall or candidate petition circulator payments or recall donors, or require naming paid circulators or recall donors;* and no person shall receive government money, labor, or aid, directly or indirectly, to defeat any recall or to repay any recall campaign costs;

(2) *"elective" means in an office subject to regular or retention elections, whether or not appointed or term-limited; amended article XXI applies to all home rule jurisdictions as a matter of statewide concern;*

(3) to enforce amended article XXI, any Colorado adult citizen may file a district court case, which shall be decided within 30 days; direct appeals to the supreme court shall be filed within 10 days thereafter and decided within 60 days; amended article XXI shall be interpreted strictly in favor of this fundamental right to petition for recall and replacement, and against all officers and governments; and *amended article XXI supersedes all conflicting state and local constitutional, statutory, charter, and other laws and legal provisions.*

(Emphasis added.)

¶ 18 Under the penultimate enforcement provision of the initiative, all existing state or local recall provisions conflicting with amended article XXI would be preempted. Proposed Initiative, 2013–2014 # 76, § 3(3).

In particular, in sections 2 and 3, the initiative proposes substantial changes to the manner in which state and local recall elections are triggered and conducted under current constitutional and statutory law. Proposed Initiative, 2013–2014 # 76, §§ 2–3. These provisions preempt existing constitutional, statutory, and home rule charter provisions, altering the manner in which state and local recall elections are triggered and conducted. Proposed Initiative, 2013–2014 # 76, § 3(3).

¶ 19 We highlight a number of significant changes sections 2 and 3 of Initiative # 76 would introduce into article XXI. For example, Initiative # 76 changes the threshold requirement for the number of valid petition signatures required to subject an officer to a recall election. Proposed Initiative, 2013–2014 # 76, § 2(4). Currently, article XXI, section 1, applicable to state elected officers, provides that a recall petition must be signed by a number of registered electors "equal in number to twenty-five percent of the entire vote cast at the last preceding election for all candidates for the position which the incumbent sought to be recalled occupies." Initiative # 76 would repeal and reenact article XXI with a new signature threshold: "the lesser of 5 [percent] of active registered electors in the recall area or 100,000." Proposed Initiative, 2013–2014 # 76, § 2(4).

¶ 20 This blanket 5 percent or 100,000–person signature threshold would also apply under the initiative to recall petitions for local officers. Proposed Initiative, 2013–2014 # 76, § 2(4). Currently, the percentage or number of registered electors required to sign local recall petitions varies, according to specific applicable statutes. For example, the number of registered electors currently required to trigger a recall election for a school district elected officer is "equal in number to at least [40] percent of those electors who voted in such district in the last preceding election at which the director to be recalled was elected." § 1–12–105, C.R.S. (2013). For state and county elected offices held by only one person, recall petitions shall be currently signed by "[25] percent of the entire vote cast at the last preceding general election for all candidates for the office which

the incumbent sought to be recalled occupies." § 1–12–104, C.R.S. (2013). For nonpartisan elected officer positions, recall petitions currently require the signatures of "three hundred eligible electors of the political subdivision" or "[40] percent of the eligible electors," whichever is less. § 1–12–106, C.R.S. (2013).

¶ 21 The content of recall ballots would also be changed under Initiative # 76. Under existing article XXI, section 3, the recall election ballot for a state elected officer shall set forth, in not more than two hundred words, reasons "in the petition for demanding his recall," following which shall be printed, in not more than three hundred words, the incumbent "officer's justification of his course in office." Initiative # 76 would eliminate this provision from the constitution.

¶ 22 Initiative # 76 would also change the manner of filling vacancies caused by recall elections. Section 1–12–118, C.R.S. (2013), currently provides that "election of a successor shall be held at the same time as the recall election." Similarly, Initiative # 76 requires that ballots list candidates nominated to complete a recalled officer's term. Proposed Initiative, 2013–2014 # 76, § 2(7) (also establishing petition procedures for successor candidates). However, if no successor is elected, the vacancy cannot be filled until the next November election. Proposed Initiative, 2013–2014 # 76, § 2(8) ("With no successor, a vacancy is filled by like means in the next November election at least 90 days later."). In the interim, "the lieutenant governor may appoint a replacement governor and mayoral offices may be filled," but other elective offices would remain vacant under the proposal. Proposed Initiative, 2013–2014 # 76, § 2(8). In contrast, existing statutes allow for appointments to fill vacancies in elective offices without delay. *See, e.g.,* § 1–12–204, C.R.S. (2013) ("All vacancies in any state office and in the office of district attorney shall be filled by appointment by the governor until the next general election after the vacancy occurs, when the vacancy shall be filled by election."); § 1–12–206(1), C.R.S. (2013) ("In case of a vacancy occurring in the office of county commissioner, a vacancy committee ... shall ... fill the vacancy by

appointment within ten days after the occurrence of the vacancy."); § 1–12–207, C.R.S. (2013) ("Any vacancy on a nonpartisan board shall be filled by appointment by the remaining director or directors.").

¶ 23 Initiative # 76 also proposes to eliminate the application of existing campaign finance laws to recall petitions and elections. Proposed Initiative, 2013–2014 # 76, § 3(1). A committee advocating for or against the recall of any elected official is currently classified as an issue committee. *See* § 1–45–103(12), C.R.S. (2013) (defining issue committees). Under existing article XXVIII, sections 3 and 7, of the Colorado Constitution, contributions received by issue committees are subject to monetary limits and disclosure requirements. Article XXVIII, section 7, requires "disclosure of the occupation and employer of each person who has made a contribution of one hundred dollars or more to a[n] ... issue committee." Article XXVIII, section 7, also specifically incorporates section 1–45–108, C.R.S. (2013), which provides in subsection 6 that "[a]ny issue committee whose purpose is the recall of any elected official shall register with the appropriate officer within ten calendar days of accepting or making contributions or expenditures in excess of two hundred dollars to support or oppose the recall." Initiative # 76 would preempt these requirements in recall elections by prohibiting the regulation and required disclosure of recall donors. Proposed Initiative, 2013–2014 # 76, § 3(1) (*"[N]o law, rule, or court shall prohibit, regulate, or limit* recall or candidate petition circulator payments or *recall donors,* or require naming ... recall donors ....") (emphasis added).

¶ 24 Requirements applicable to petition circulation would also change in Initiative # 76. Section 1–12–108(6)(b), C.R.S. (2013), currently provides that each petition section must bear an attached signed, notarized, and dated affidavit executed by the person who circulated the petition section, including the circulator's name and address and other specific information. In contrast, Initiative # 76 proposes to enact a new article XXI, section 3(1), providing that "no law, rule, or court shall ... *require naming paid circulators,"*

thereby preempting the existing name disclosure requirement for paid recall petition circulators. (Emphasis added).

¶ 25 Collectively, these changes to the manner in which recall elections are triggered and conducted constitute a single subject. We turn now to the second subject of Initiative # 76, which would establish a new constitutional right to recall non-elected state and local officers.

### D. New Constitutional Right to Recall Non–Elected Officers

¶ 26 As discussed above, the right of recall in article XXI is limited to elected officers. Put simply, the existing principle has been that the voters should have the power to remove those persons whom the voters elected into office. Initiative # 76 would institute a new constitutional right to recall any "nonelective officer" who is "the head, a board member, or judicial officer of any state or local authority, agency, commission, department, division, enterprise, bureau, district, office, or board, or other governmental entity that has governmental power or collects, spends, borrows, or loans public money." Proposed Initiative, 2013–2014 # 76, § 1. Under existing law, elected officers appoint persons who carry out the day-to-day operations of the executive branch of state and local governments, implementing the laws, ordinances, and resolutions adopted by the legislative branch of government. These nonelected officers hold their offices at the will of the appointing authority or for a prescribed term of years.

¶ 27 For example, at the state level, the governor appoints the members of state boards and commissions and the heads of executive departments whose positions were created by the General Assembly. These non-elected officers serve at the will of the appointing authority or for a term of years. Under the Reorganization Act of 1968, § 24–1–101 et seq., C.R.S. (2013), the governor appoints the heads of principal state executive branch departments with the consent of the senate. § 24–1–108. For example, the governor appoints the Colorado Department of Transportation's executive director with the consent of the senate, and the executive

director serves "at the pleasure of the governor." § 43–1–103(1), C.R.S. (2013); *see also* § 24–1–110(1)(v) (designating the department as a principal department). The executive director has general supervisory control of the department's employees. § 43–1–105(1)(c), C.R.S. (2013). The governor also appoints members of the Transportation Commission, with the consent of the senate, for a four-year term. § 43–1–106(4)(a), C.R.S. (2013).

¶ 28 This pattern of appointment for state executive department heads and members of boards and commissions is replicated throughout statutes creating state executive department agencies. For example, the governor appoints the executive director of the Colorado Department of Public Health and Environment, *see* § 24–1–110(1)(i) (designating the department as a principal department), and appoints the members of the Colorado Air Quality Control Commission with the consent of the senate for three-year terms, *see* § 25–7–104(1), (3), C.R.S. (2013). Likewise, the governor appoints justices of the supreme court, judges of the court of appeals, and judges of the district and county courts; under existing law, they are not subject to recall election. *See* Colo. Const. art. VI, §§ 23–25.[2] The Colorado Constitution provides for the election of certain members of the executive branch, Colo. Const. art. IV, § 3, and these elected officers are also statutorily authorized to appoint officers who are accountable to them. For example, the attorney general appoints a chief deputy. § 24–31–103, C.R.S. (2013). The secretary of state likewise appoints a deputy. § 24–21–105, C.R.S. (2013). Both have full authority to act in all things relating to the office.

¶ 29 Similarly, under statutes creating statutory counties, cities and towns, and local public districts, elected officials appoint officers who are charged with administering the day-to-day operations of the particular governmental entity; these officers typically serve at the will of the appointing authority or for a term of years. *See, e.g.,* § 30–11–107(n), C.R.S. (2013) (applicable to county commission appointment of county officers); § 31–15–201(1)(b), C.R.S. (2013) (applicable to municipal governing body appointment of officers); § 32–1–1001(1)(i), C.R.S. (2013) (applicable to special district governing body appointment of employees); *see also, e.g.,* Charter of the City and County of Denver, § 10.1.2 (pertaining to the mayor's appointment of members to the Board of Water Commissioners). Under article VI, section 26, of the Colorado Constitution, the mayor of the City and County of Denver also appoints Denver's county court judges; they are not currently subject to recall elections.

### E. Unconstitutional Setting of Title in This Case

¶ 30 In sum, Initiative # 76 contains at least two subjects. The first establishes preemptive changes to the manner in which state and local recall elections are triggered and conducted. The second expands recall to non-elected state and local officers. The single subject requirement of article V, section 1(5.5), of the Colorado Constitution prohibits such attempts to roll together multiple subjects in order to attract the votes of various factions that might favor one of the subjects and otherwise oppose the others. *See In re Proposed Initiative for 2005–2006 # 74,* 136 P.3d 237, 242 (Colo.2006).

¶ 31 We must give effect to the voters' intent in amending the Colorado Constitution to include the single subject requirement for ballot initiatives. This amendment to the constitution occurred after the voters approved a 1992 initiative, which its proponents called "The Taxpayer's Bill of Rights" (re-

---

2. Hayes contends that the initiative's proposed right to recall judges is a separate and distinct subject from the right to recall non-elected officers. We need not and do not decide this issue because Initiative # 76 contains at least two separate and distinct subjects in violation of article V, section 1(5.5), of the Colorado Constitution. *See In re Amend TABOR 25,* 900 P.2d at 123 (explaining that, when an initiative encompasses more than a single subject, we need not determine whether the initiative contains other possible additional subjects. Hayes asserts that Initiative # 76 contains six separate subjects, including changes to the right of recall, recall of appointed executive officials, recall of judges, prohibition on the timely replacement of certain recalled officials, elimination of the single subject requirement of recall petitions, and allowance of five different types of officials to be recalled by the same petition.

ferred to as "TABOR" or "Amendment 1" in our case law), a multiple subject measure that changed the approval process for new taxes, established revenue limits, and imposed refund requirements, among other provisions. *See In re Proposed Initiative for 1997–1998 # 30*, 959 P.2d 822, 826 (Colo. 1998); *see also* Colo. Const. art. X, § 20 (the Taxpayer's Bill of Rights, as amended). After the voters approved the institution of the single subject requirement in 1994, we held that repeal of the multiple subjects enacted by Amendment 1 could not be accomplished through a single initiative, *In re Proposed Initiative for 2001–2002 # 43*, 46 P.3d 438, 447 (Colo.2002). Repeal of Amendment 1's multiple subjects would have to be accomplished, if at all, through separate proposals. *Id.*[3]

¶ 32 Article V, section 1(5.5), was intended to prevent proponents from engaging in "log rolling" or "Christmas tree tactics." *In re Proposed Initiative for 2001–2002 # 43*, 46 P.3d at 441. Accordingly, we have held that each subject of an initiative must stand on its own merits, as opposed to being coiled up in the folds of a complex proposal. *Id.* at 442–43. For example, *In re Proposed Initiative for 2001–2002 # 43* is a case that dealt with an initiative proposal that stacked additional subjects onto the central focus of the initiative, which was attempting to modify the process for placing initiative and referendum petitions on the ballot. *Id.* at 448.

¶ 33 Likewise, in the case before us, Initiative # 76's proposed changes to the recall process are distinct and independent from its proposed expansion of the officers subject to recall. Initiative # 76 combines proposals to expand the types of officers that are subject to recall with proposals to change the process for recalling officers, replacing and preempting multiple existing constitutional and statu-

tory provisions. *See In re Proposed Initiative for 1999–2000 # 104*, 987 P.2d at 254 ("[A] proposed initiative contains multiple subjects not only when it proposes *new* provisions constituting multiple subjects, but also when it proposes to *repeal* multiple subjects.") (emphasis in original). But, a new constitutional right to recall non-elected officers has no necessary connection to the initiative's new recall petition, election, and vacancy provisions. Such separate subjects must stand and be examined on their own merits. *See In re Proposed Initiative for 1997–1998 # 64*, 960 P.2d at 1196 (explaining that one of the main purposes of the single subject requirement is to prevent the enactment of measures that could not be carried upon their merits); *see also In re Proposed Initiative for 1997–1998 # 30*, 959 P.2d at 826–27 (reversing title-setting action where a proposed initiative combined a tax cut with new criteria for revenue and spending increases). Voters would be surprised to learn that, in voting for the new article XXI's revamped procedures for recall petitions and elections, they are also authorizing the recall firing, at any time, of—for example—the appointed heads of Colorado's state executive departments, their appointed city or county manager, or the appointed head of their local library.

¶ 34 In conclusion, we hold that Initiative 2013–2014 # 76 relates to more than one subject and has at least two distinct and separate purposes that are not dependent upon or necessarily and properly connected with each other, in violation of article V, section 1(5.5), of the Colorado Constitution. The proponents' attempts to characterize this initiative under an overarching theme cannot save it. *See In re Proposed Initiative for 2001–2002 # 43*, 46 P.3d at 442. In this case, the Title Board has described mul-

---

3. Our multiple subject cases also include a number pertaining to judicial appointees. *See, e.g., In re Proposed Initiative for 1997–1998 # 64*, 960 P.2d 1192, 1197–98 (Colo.1998) (proposing initiative combining new requirements regarding nomination and appointment of state court judges and justices with repeal of article VI, section 26, pertaining to county judges of the City and County of Denver); *In re Proposed Initiative for 1997–1998 # 95*, 960 P.2d 1204, 1206–07 (Colo.1998) (proposing initiative combining elimination of the power of home rule cities to control the election, appointment, and retention of municipal court judges with provision limiting judges and justices from serving more than three four-year terms); *In re Proposed Initiative for 1999–2000 # 29*, 972 P.2d 257, 263–64 (Colo. 1999) (proposing initiative combining alteration of composition and manner of selecting members of the Judicial Discipline Commission with removing Denver City and County judges from serving as state judges for any purpose).

tiple subjects with a single all-encompassing umbrella phrase ("concerning the recall of government officers") that is no more constitutionally permissible than setting a single title for a "Taxpayer's Bill of Rights," "government revenues," or "waters." *See In re Proposed Initiative for 2001–2002 # 43*, 46 P.3d at 447; *In re Public Rights in Waters II*, 898 P.2d 1076. Nor is it permissible to set a title for an initiative that combines process changes with other substantive changes that have no necessary or proper connection with each other. *See In re Proposed Initiative for 2003–2004 # 32 & # 33*, 76 P.3d 460, 462–63 (Colo.2003) (discussing cases involving a battery of procedures governing the exercise of initiative and referendum rights).

¶ 35 In the case before us, some voters might favor changes to the manner in which recall elections for elected officers are triggered and conducted, but not favor establishing a new constitutional right to recall non-elected officers, or vice-versa. Initiative # 76 unconstitutionally combines the two subjects in an attempt to attract voters who might oppose one of these two subjects if it were standing alone.

### III.

¶ 36 Accordingly, we reverse the Title Board's action in setting a title for Initiative # 76 and return this matter to the Title Board with directions to strike the title and return the initiative to its proponents.

APPENDIX—Proposed Initiative
76 and Titles

Be it Enacted by the People of the State of Colorado:

Article XXI of the Colorado Constitution is repealed and re-enacted as follows:

Article XXI. RECALL FROM OFFICE.

**Section 1. Eligibility.** Any elective officer in any state or local legislative, executive, or judicial office is eligible for recall. Any non-elective officer is eligible for recall when that person is the head, a board member, or a judicial officer of any state or local authority, agency, commission, department, division, enterprise, bureau, district, office, or board, or other governmental entity that has governmental power or collects, spends, borrows, or loans public money. This article intends to increase public accountability of public servants.

**Section 2. Procedures.** (1) Five registered electors eligible to vote on the recall may file at any time a signed request to recall any officers listed in section 1. Statewide recalls shall be conducted by the secretary of state. Other recalls shall be conducted by the election official of any county, or city and county, in the recall area.

(2) Election officials shall deliver a requested sample petition section within two days. Each black ink section shall contain 100 entry lines, 20 per 8 1/2" by 14" page in portrait layout, a circulation affidavit, and the question, "Shall (names of officers) be recalled as (titles and name of government)?" No government shall detain, stop, cite, or arrest petition circulators or signers for or while peacefully petitioning. Recall-related perjury, forgery, and felony frauds shall be prosecuted.

(3) Statewide petition entries shall be filed within 180 days of sample petition section delivery, and local petition entries within 90 days. One 30–day extension to file added entries signed at any time shall start from the date a decision of invalidity is issued. That decision shall be the later of the official report or the court results. Those added entries shall be reviewed similarly.

(4) The required number of valid petition entries shall be the lesser of 5% of active registered electors in the recall area or 100,-000 such entries. Signers shall be registered electors in the recall area. If executive officers serve a council, legislative, or other district, that district shall be the recall area. Entry or lines shall require only signature and printed name, residential address, and city or town. No error, use, or lack of minor details like middle names or initials, common nickname, street type or direction, apartment or postal code shall void an entry. Each entry shall be reviewed individually, with no random or statistical sampling machine reading. Errors in affidavits or sample sections shall not void entries. Entries with a reada-

ble first and last name and address, and an attached affidavit with or without errors, shall be presumed valid until disproved by clear and convincing evidence.

(5) Within 20 days of filing, the election officials shall count, examine, itemize, and report entries for validity. Within 10 days of that report, only recall filers and the officer may each file without a fee a protest to the supreme court for its new review of disputed entries. Such review shall be conducted, and its results shall issue within 30 days of the protest filing. No party shall receive attorney fees or costs.

(6) Elections shall be held on a Tuesday within 60 days of the last validation decision, but statewide elections shall be in November only. Death, resignation, or removal from office shall stop the recall election but not the vacancy election. Ballots shall repeat without argument the petition question for each officer, list "Yes" and "No" choices, and list one website for each side.

(7) Ballots shall then list candidates nominated to complete the term, and list one website for each. The officer is ineligible. The required number of valid petition entries shall be the lesser of 1% of active registered electors in the recall area or 10,000 such entries. Entries shall be filed by 10 days after the earlier of the first recall entry filing or a recall stopped as provided above. Validation and extension deadlines shall be 20% of the time allowed for recall entries. Unless otherwise state in this article, the standards for recall petitions shall apply to nominations in recall or later vacancy elections.

(8) Successors shall be installed at once. With no successor, a vacancy is filled by like means in the next November election at least 90 days later. In the interim, the lieutenant governor replaces a recalled governor and mayoral offices may be filled. Recall petitions against successors shall not start for two years. Non-elective officer vacancies are filled by appointments.

 Section 3. Enforcement. (1) No officer in a recall shall conduct that recall or decide its entry validity. No person shall sign a petition more than once. An entry made by good faith mistake is not unlawful. Any Colorado adult citizen may circulate any petition. To reduce retaliation and intimidation, no law, rule, or court shall prohibit, regulate, or limit recall or candidate petition circulator payments or recall donors, or require naming paid circulators or recall donors. No person shall receive government money, labor, or aid, directly or indirectly, to defeat any recall or to repay any recall campaign costs.

(2) "Elective" means in an office subject to regular or retention elections, whether or not appointed or term limited. Recalled officers, and those who resigned or were removed from office during their recall process, shall not be any officer, as defined in section 1, for the next four years. Up to five officers in the same government may be listed on one recall petition, but they shall be voted on separately. No one officer shall be listed on a recall ballot more often than once every four years. This article also applies in all home rule jurisdictions as a matter of statewide concern. The secretary of state website shall always list by name, title, and government all officers eligible for recall, and also all persons ineligible to be section 1 officers until the date listed on that website.

(3) To enforce this article on issues other than specific entry validity, any Colorado adult citizen may file a district court case, which shall be decided within 30 days. Direct appeals to the supreme court filed within 10 days thereafter shall be decided within 60 days. Only successful plaintiffs enforcing this article shall be awarded their costs, attorneys fees, and damages. This article is self-executing, severable, and effective upon passage. It shall be interpreted strictly in favor of this fundamental right to petition for recall and replacement, and against all officers and governments. It supersedes all conflicting state and local constitutional, statutory, charter, and other laws and legal provisions.

*Ballot Title Setting Board*

Proposed Initiative 2013–2014 # 76

 The title as designated and fixed by the Board is as follows:

An amendment to the Colorado constitution concerning the recall of government officers, and, in connection therewith, defining which officers are eligible for recall, including certain non-elective officers; describing procedures and requirements to initiate, conduct, protest, and enforce recall elections; altering the number of signatures required to initiate a recall; prohibiting any officer who is recalled, resigns, or is removed during the recall process from serving in certain offices for four years; and prohibiting the application of certain campaign finance requirements to recalls.

The ballot title and submission clause as designated and fixed by the Board is as follows:

Shall there be an amendment to the Colorado constitution concerning the recall of government officers, and, in connection therewith, defining which officers are eligible for recall, including certain non-elective officers; describing procedures and requirements to initiate, conduct, protest, and enforce recall elections; altering the number of signatures required to initiate a recall; prohibiting any officer who is recalled, resigns, or is removed during the recall process from serving in certain offices for four years; and prohibiting the application of certain campaign finance requirements to recalls?

JUSTICE EID dissents, and JUSTICE COATS joins in the dissent.

JUSTICE EID, dissenting.

¶ 37 Proposed Initiative for 2013–2014 # 76 contains one subject: the recall of government officials. Every provision of the proposed initiative relates to that subject, including those that describe the new recall process and define the kinds of officials subject to it. Indeed, the two "subjects" identified by the majority are interrelated and congruous: the second "subject" (which defines the government officials to whom the new recall procedures apply) is necessarily a subset of the first (those new procedures). Because the proposed initiative easily satisfies the single-subject requirement, I respectfully dissent.

¶ 38 The majority is entirely correct that the proposed initiative both defines a new recall procedure for Colorado and applies that procedure to certain officials. Maj. op. ¶ 9. But I disagree that this fact somehow creates multiple subjects. On the contrary, the two "subjects" are integrally related: the proposed initiative first defines the new recall procedures, and then describes the class of government officials subject to them. To put it simply, the new procedures have to apply to someone–and here, they apply to the class of government officials enumerated in the proposed initiative. The provisions thus easily meet the requirement that they be "dependent upon or connected with each other." *In re Proposed Initiative for 2011–2012 # 3*, 2012 CO 25, ¶ 9, 274 P.3d 562 (citations omitted).

¶ 39 Nor does the proposed initiative present the danger of logrolling, as the majority holds. Maj. op. ¶¶ 32–33. As we have described it, logrolling is the "combining [of] subjects with no necessary or proper connection for the purpose of garnering support for the initiative from various factions—that may have different or even conflicting interests—[in order to] lead to the enactment of measures that would fail on their own merits." *In re Proposed Initiative for 2011–2012 # 3*, ¶ 11. The majority's suggestion that the proposed initiative somehow brings together disparate factions in order to achieve their otherwise disparate agendas is entirely unconvincing. Those who favor reforming the Colorado recall procedure as the initiative proposes would also favor the initiative's application of those reforms to a broad array of government officials. Both "subjects" identified by the majority are in fact interrelated, pointing in the same direction– reforming the recall procedures in Colorado.

¶ 40 What is conspicuously absent from the majority's opinion, moreover, is any deference to the Title Board's determination that the proposed initiative contains a single subject. In reviewing actions of the Title Board, "we employ all legitimate presumptions in favor of the propriety of the Board's actions." *In re Proposed Initiative for 2009–2010 # 45,*

234 P.3d 642, 645 (Colo.2010). We will "only overturn the Title Board's finding that an initiative contains a single subject in a clear case." *In re Proposed Initiative for 2011–2012 # 3,* ¶ 6. Among other things, this restraint ensures that we apply the single-subject rule "without conforming it to [our] own policy preferences." *In re Proposed Initiative for 2009–2010 # 91,* 235 P.3d 1071, 1088 (Colo.2010) (Coats, J., dissenting). While the majority cites these principles, maj. op. ¶ 8, it utterly fails to abide by them.

¶ 41 Mindful of our limited role in reviewing proposed initiatives, I would find that this proposed initiative is nowhere near the "clear case" of multiple subjects required by our case law. Accordingly, I respectfully dissent from the majority's opinion finding that Proposed Initiative for 2013–2014 # 76 contains more than one subject.

I am authorized to state that JUSTICE COATS joins in the dissent.