Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
December 23, 2019

**2019 CO 107**

**No. 19SA183, In re Proposed Ballot Initiative 2019–2020 #3 "State Fiscal Policy"—Title Setting—Ballot Initiatives—Clear Title Requirement—Fiscal Impact Statement Abstract.**

In this case, the Title Board set a title for Proposed Ballot Initiative 2019–2020 #3 ("Proposed Initiative") that reads, in pertinent part, "An amendment to the Colorado constitution concerning the repeal of the Taxpayer's Bill of Rights (TABOR), Article X, Section 20 of the Colorado constitution."  The Board also ultimately adopted an abstract addressing the economic impact of the Proposed Initiative if passed.

The supreme court is now asked to determine whether (1) the title is clear and not misleading; (2) the use of the phrase "Taxpayer's Bill of Rights" in the title constitutes an impermissible catch phrase; and (3) the abstract is misleading.  The court concludes that the title and abstract are clear and not misleading and that the phrase "Taxpayer's Bill of Rights," as used in this title, is not an impermissible catch phrase.

Accordingly, the court affirms the decision of the Title Board.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

---

## 2019 CO 107

---

### Supreme Court Case No. 19SA183

*Original Proceeding Pursuant to § 1-40-107(2), C.R.S. (2019)*

Appeal from the Ballot Title Setting Board

---

In the Matter of the Title, Ballot Title and Submission Clause for 2019-2020 #3
"State Fiscal Policy"

### Petitioners:

Douglas Bruce and William Banta,

v.

### Respondents:

Carol Hedges and Steve Briggs,

### and

### Title Board:

Jason Gelender, Melissa Polk, and David Powell,

and

### Petitioners:

Carol Hedges and Steve Briggs

v.

### Respondent:

William Banta

**and**

**Title Board:**

Jason Gelender, Melissa Polk, and David Powell.

---

**Title Board Action Affirmed**
*en banc*
December 23, 2019

---

Douglas Bruce, pro se
  *Colorado Springs, Colorado*

William M. Banta, pro se
  *Englewood, Colorado*

**Attorneys for Respondents/Petitioners Steve Briggs and Carol Hedges:**
Tierney Lawrence LLC
Edward T. Ramey
Martha M. Tierney
  *Denver, Colorado*

**Attorneys for Title Board:**
Philip J. Weiser, Attorney General
Emily B. Buckley, Assistant Attorney General
  *Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.
**JUSTICE MÁRQUEZ** concurs in part and dissents in part, and **JUSTICE BOATRIGHT** joins in the partial concurrence and partial dissent.

¶1 In this case, the Title Board set a title for Proposed Ballot Initiative 2019–2020 #3 ("Proposed Initiative") that reads, in pertinent part, "An amendment to the Colorado constitution concerning the repeal of the Taxpayer's Bill of Rights (TABOR), Article X, Section 20 of the Colorado constitution." The Board also ultimately adopted an abstract that states, regarding the economic impact of the Proposed Initiative:

> The measure is expected to increase revenue and spending for state and local governments over the long term, shifting a portion of the state's economy from the private sector to the public sector. If government spending for public goods and services, including for example health care, education, social services, infrastructure, and public safety, increases, as expected, household and business spending or saving will be correspondingly reduced.

¶2 We must now determine whether (1) the title is clear and not misleading; (2) the use of the phrase "Taxpayer's Bill of Rights" in the title constitutes an impermissible catch phrase; and (3) the abstract is misleading. We conclude that the title and abstract are clear and not misleading and that the phrase "Taxpayer's Bill of Rights," as used in the title before us, is not an impermissible catch phrase.

¶3 Accordingly, we affirm the decision of the Title Board.

## I. Facts and Procedural Background

¶4 Pursuant to section 1-40-106, C.R.S. (2019), Steve Briggs and Carol Hedges, as designated representatives of the proponents of the Proposed Initiative ("Proponents"), submitted the Proposed Initiative to the Title Board for the setting

3

of a title and ballot title and submission clause. The Board held a hearing and declined to set a title, concluding that the measure did not constitute a single subject. Proponents filed a motion for rehearing, requesting that the Board reconsider that determination, but the Board denied that motion.

¶5    Proponents then petitioned this court for review pursuant to section 1-40-107(2), C.R.S. (2019). This court subsequently reversed the Title Board, concluding that the Proposed Initiative constituted a single subject, and we returned the Proposed Initiative to the Board for the purpose of setting a title and ballot title and submission clause. *In re Title, Ballot Title & Submission Clause for 2019–2020 #3*, 2019 CO 57, ¶ 40, 442 P.3d 867, 873.

¶6    The Board conducted a remand hearing and set a title and ballot title and submission clause for the Proposed Initiative. The title provided, "An amendment to the Colorado constitution concerning the repeal of the Taxpayer's Bill of Rights (TABOR), Article X, Section 20 of the Colorado constitution."

¶7    The Board also adopted an abstract, which initially provided:

> The measure is expected to increase revenue and spending for state and local governments over the long term, shifting a portion of the state's economy from the private sector to the public sector. Government spending for public goods and services, including for example health care, education, social services, infrastructure, and public safety, will increase. Household and business spending or saving will be correspondingly reduced.

4

¶8 Thereafter, the Board received three motions for rehearing. Petitioners Douglas Bruce and William Banta separately objected to the title on the grounds that it is unfair and does not provide to voters the complete, correct, and true meaning of the Proposed Initiative. Proponents objected on the grounds that (1) the title did not fairly express the true meaning and intent of the Proposed Initiative and contained an impermissible catch phrase and (2) the abstract was misleading because its commentary regarding the Proposed Initiative's expected economic impact was "wholly speculative."

¶9 The Board ultimately denied Bruce's and Banta's motions for rehearing but granted in part Proponents' motion for rehearing, modifying the abstract to read, in pertinent part:

> The measure is expected to increase revenue and spending for state and local governments over the long term, shifting a portion of the state's economy from the private sector to the public sector. *If* government spending for public goods and services, including for example health care, education, social services, infrastructure, and public safety, *increases, as expected*, household and business spending or saving will be correspondingly reduced.

(Emphases added.)

¶10 Bruce, Banta, and Proponents now each petition for review pursuant to section 1-40-107(2).

5

## II.  Analysis

¶11    We begin by discussing the applicable standard of review.  We then consider whether the title set by the Board complies with the clear title requirement of article V, section 1(5.5) of the Colorado Constitution.  Concluding that it does, we proceed to consider whether "Taxpayer's Bill of Rights," as that phrase is used in the title, is an impermissible catch phrase, and we conclude that it is not.  Finally, we review and reject Proponents' contention that the abstract is misleading.

### A.  Standard of Review

¶12    "The Title Board is vested with considerable discretion in setting the title and the ballot title and submission clause," and we will reverse the Board's decision only when a title is insufficient, unfair, or misleading.  *In re Title, Ballot Title & Submission Clause for 2013–2014 #90*, 2014 CO 63, ¶ 8, 328 P.3d 155, 159.  In reviewing Title Board title settings, "we employ all legitimate presumptions in favor of the propriety of the Board's actions."  *In re Title, Ballot Title & Submission Clause for 2009–2010 #45*, 234 P.3d 642, 645 (Colo. 2010).

¶13    This court also has the authority to review abstracts proposed by the Title Board.  *In re Title, Ballot Title & Submission Clause for 2017–2018 #4*, 2017 CO 57, ¶ 19, 395 P.3d 318, 323.  The abstract that is included in the fiscal impact statement is final "unless modified in accordance with section 1-40-107."  § 1-40-105.5(2)(a), C.R.S. (2019).  In reviewing an abstract, we apply the same standard of review as

6

we do for single subject and clear title findings, drawing all legitimate presumptions in favor of the propriety of the Title Board's decision and overturning the Board's decision only in a clear case. *In re 2017–2018 #4*, ¶ 20, 395 P.3d at 323.

¶14 In our limited review of the Title Board's actions, we do not address the merits of the proposed initiative. *In re 2013–2014 #90*, ¶ 9, 328 P.3d at 159. Nor do we suggest how it might be applied if enacted. *Id.* Rather, we examine the initiative's wording to determine whether it and its title comport with the constitutional single subject and clear title requirements, and we review the fiscal impact statement to ensure that it complies with the applicable statutory requirements. *See In re 2017–2018 #4*, ¶¶ 19, 23–24, 395 P.3d at 323–24; *In re 2013–2014 #90*, ¶ 9, 328 P.3d at 159. In conducting this limited inquiry, we employ the general rules of statutory construction, and we give words and phrases their plain and ordinary meanings. *In re 2013–2014 #90*, ¶ 9, 328 P.3d at 159.

## B. Clear Title

¶15 As pertinent here, the Colorado Constitution requires that an initiative contain only one subject and that the subject be clearly expressed in its title. Colo. Const. art. V, § 1(5.5). The title and submission clause should allow voters, whether or not they are familiar with the subject matter of a particular proposal, to determine intelligently whether to support or oppose the proposal. *In re*

*2013–2014 #90*, ¶ 23, 328 P.3d at 162. Thus, "[i]n setting a title, the title board shall consider the public confusion that might be caused by misleading titles and shall, whenever practicable, avoid titles for which the general understanding of the effect of a 'yes/for' or 'no/against' vote will be unclear." § 1-40-106(3)(b). In addition, the title must "correctly and fairly express the true intent and meaning" of the initiative. *Id*.

¶16    The Board's duty in setting a title is to summarize the central features of a proposed initiative. *In re 2013–2014 #90*, ¶ 24, 328 P.3d at 162. In doing so, the Board need not explain the meaning or potential effects of the proposed initiative on the current statutory scheme. *Id*. Nor must the Board include a description of every feature of a proposed measure. *In re Title, Ballot Title, Submission Clause & Summary Clause of Proposed Initiative for an Amendment to Article XVI, Section 6, Colo. Const., Entitled "W.A.T.E.R.,"* 875 P.2d 861, 864 (Colo. 1994). Rather, the Board "must use its discretion to determine whether it can fairly delineate or describe the law or constitutional provision to be repealed without unduly expanding the title [and] ballot title and submission clause . . . and without jeopardizing the impartiality of the designations that ultimately will be placed before the electorate." *In re Title, Ballot Title & Submission Clause & Summary of Proposed Constitutional Amendment Under the Designation "Pregnancy,"* 757 P.2d 132, 137 (Colo. 1988).

8

¶17   In determining whether a title is clear, we do not consider whether the Title Board set the best possible title. *In re 2013–2014 #90*, ¶ 25, 328 P.3d at 162. Instead, our role is to ensure that the title fairly reflects the proposed initiative such that voters will not be misled into supporting or opposing the initiative because of the words that the Title Board employed. *Id.*

¶18   Here, the title set by the Board makes clear that the purpose of the Proposed Initiative is to repeal in its entirety the section of the Colorado Constitution known as the Taxpayer's Bill of Rights, Colo. Const. art. X, § 20. *See In re 2019–2020 #3*, ¶ 17, 442 P.3d at 870 ("The initiative effectuates one and only one general objective or purpose, namely, the repeal of TABOR."). In our view, this title comports with the requirement that a title should allow voters, whether or not they are familiar with the subject matter of the proposal, to determine intelligently whether to support the proposal. *In re 2013–2014 #90*, ¶ 23, 328 P.3d at 162. Moreover, we cannot discern how voters could be confused by this title or how the effect of a yes/for or no/against vote would be unclear. § 1-40-106(3)(b); *cf. In re Title, Ballot Title & Submission Clause for 2015–2016 #156*, 2016 CO 56, ¶ 14, 413 P.3d 151, 153–54 (concluding that because voters reading the title at issue would be forced to speculate whether the initiative would do any of four different things, the voters would not be able to ascertain the initiative's intent and therefore would be unable to choose intelligently whether to vote for or against it). And we perceive no

grounds on which to argue that the title would jeopardize the impartiality of the designation to be placed before the voters or would mislead voters into supporting or opposing the initiative because of the words that the Title Board employed. *In re 2013–2014 #90*, ¶ 25, 328 P.3d at 162; *In re Proposed Constitutional Amendment Under the Designation "Pregnancy,"* 757 P.2d at 137.

¶19 Accordingly, we conclude that the title at issue satisfies our constitution's clear title requirements.

¶20 In reaching this conclusion, we are not persuaded by Bruce's and Banta's contentions that the title fails to satisfy the clear title requirement because it does not inform voters of the basic features of the measure, i.e., the "main features" of TABOR that would be repealed were the measure to pass. Bruce and Banta would have the Title Board list in the title a substantial number of TABOR's provisions, noting that the Proposed Initiative, if passed, would end the rights, powers, and limits provided in each of those provisions. In Bruce's and Banta's views, without such a list, voters will be denied the complete, correct, and true meaning of the Proposed Initiative.

¶21 As noted above, the Board is not required to include a description of every feature of the provision to be repealed. *In re Proposed Initiative for an Amendment to Article XVI, Section 6, Colo. Const., Entitled "W.A.T.E.R.,"* 875 P.2d at 864. Moreover, listing in the title a substantial number of TABOR's provisions, as Bruce

10

and Banta request, would make the title excessively long and difficult to read, and it likely would confuse rather than assist voters. *See In re Proposed Constitutional Amendment Under the Designation "Pregnancy,"* 757 P.2d at 137 (noting that the Board must use its discretion to determine whether it can fairly delineate or describe the provision at issue without unduly expanding the title). Picking and choosing the provisions to include in the title would also likely result in contentions that the title is not impartial because what was included would tend to influence voters one way or the other. *See id.* (requiring the Board to describe the provision at issue without jeopardizing the impartiality of the designations to be placed before the voters). Lastly, Bruce and Banta seek a title that is apparently designed to show that the repeal of TABOR necessarily comprises multiple subjects because TABOR itself constitutes multiple subjects. We, however, only recently rejected that contention, *In re 2019–2020 #3*, ¶ 40, 442 P.3d at 873, and we decline to revisit that issue here.

¶22    We likewise are unpersuaded by Proponents' and Banta's contentions that the title violates section 1-40-106(3)(b)'s requirement that the title express the true intent and meaning of the proposal. Proponents contend that the purpose of the Proposed Initiative is to restore the people's ability to determine the source and amount of public revenues and expenditures and that the repeal of TABOR is merely the mechanism for achieving that intended purpose. Banta, in contrast,

11

contends that the purpose of the title is to repeal TABOR but that the title as drafted is ambiguous and arguably misleading because it is phrased as "[a]n amendment to the Colorado constitution *concerning* the repeal of the Taxpayer's Bill of Rights (TABOR)." (Emphasis added.) In Banta's view, a voter would not be able to tell from this language whether or not the Proposed Initiative would repeal TABOR. In addition, Banta contends, contrary to Proponents, that the title would result in the *surrender* of a number of Coloradans' constitutional rights, powers, and policies, not the restoration of such rights, as Proponents argue.

¶23 In these circumstances, in which the parties themselves cannot agree on the purpose of the title, we perceive no error in the Title Board's adoption of the words "concerning the repeal of the Taxpayer's Bill of Rights (TABOR)." Such a description is neutral and, in our view, fairly and accurately indicates the Proposed Initiative's intent and meaning. Indeed, in *In re 2019–2020 #3*, ¶ 17, 442 P.3d at 870, we stated that this Proposed Initiative "effectuates one and only one general objective or purpose, namely, the repeal of TABOR." Although we were there discussing whether the title contains a single subject, the purpose does not change in the context of the question of clear title. In any event, as we see it, Proponents' and Banta's arguments essentially ask us to consider whether the Title Board set the best possible title. As noted above, however, this is not our proper role. *See In re 2013–2014 #90*, ¶ 25, 328 P.3d at 162. Instead, we must employ all

12

legitimate presumptions in favor of the propriety of the Board's actions. *In re 2009–2010 #45,* 234 P.3d at 645.

¶24 Accordingly, we conclude that the title satisfies the constitutional clear title requirement.

## C. Catch Phrase

¶25 We next consider Proponents' contention that "Taxpayer's Bill of Rights," as used in the title at issue, is an impermissible catch phrase. We are not persuaded.

¶26 The Title Board must avoid using catch phrases or slogans when adopting a title and ballot title and submission clause. *In re 2009–2010 #45,* 234 P.3d at 649. "Catch phrases are terms that work in favor of a proposal without contributing to voter understanding; they trigger a favorable response to the proposal based not on its content but on its wording." *In re Title, Ballot Title & Submission Clause for 2015–2016 #63*, 2016 CO 34, ¶ 24, 370 P.3d 628, 634. Such phrases are prohibited in order "to prevent prejudicing voters in favor of the proposed initiative merely by virtue of those words' appeal to emotion and to avoid distracting voters from consideration of the proposed initiative's merits." *In re 2009–2010 #45*, 234 P.3d at 649.

¶27 Applying these principles, in *In re Title, Ballot Title & Submission Clause & Summary for 1999–2000 #258(A)*, 4 P.3d 1094, 1100 (Colo. 2000), we concluded that

13

the phrase "as rapidly and effectively as possible" was a catch phrase when contained in a ballot measure to require that all public school students in Colorado be taught in English. We reasoned that this phrase masked the policy question of whether an English immersion program was the most rapid and effective way to teach English to non-English speaking children, a question that was the subject of great debate at the time. *Id.* We thus noted that by including the phrase "as rapidly and effectively as possible" in the title, the Board had tipped the substantive debate surrounding the issue to be submitted to the voters. *Id.*

¶28    In contrast, we have observed that a phrase is not an impermissible catch phrase when it "is descriptive and informative based on the common understanding of the words it contains" and when it "contributes to a voter's rational comprehension and does not promote impulsive choices based on false assumptions about the initiative's purpose and its effects if enacted." *In re 2015–2016 #63*, ¶ 25, 370 P.3d at 634. Applying this standard, in *In re 2015–2016 #63*, we concluded that the use of the phrase "healthy environment," in the title for a proposed initiative to amend the Colorado Constitution to establish a right to a healthy environment, was not an impermissible catch phrase because it satisfied each of the above-quoted criteria and did not improperly distract voters or appeal to their emotions. *Id.* at ¶¶ 25, 27, 370 P.3d at 634.

¶29 Here, we conclude that the phrase "Taxpayer's Bill of Rights," as used in the title at issue, is not an impermissible catch phrase. The phrase is descriptive and informative based on the common understanding of the words used. *Id.* at ¶ 25, 370 P.3d at 634. Indeed, the constitutional provision at issue is expressly called "The Taxpayer's Bill of Rights." Colo. Const. art. X, § 20. In our view, using the name of this provision contributes to a voter's rational comprehension of the Proposed Initiative and does not trigger a favorable response, or bias voters, based on the words employed. *In re 2015–2016 #63*, ¶ 24, 370 P.3d at 634.

¶30 Moreover, notwithstanding Proponents' assertion to the contrary, the phrase "Taxpayer's Bill of Rights" is not "emotionally laden" or suggestive of comparisons to the federal Bill of Rights. Nor does the title's use of that phrase improperly imply that taxpayers would be surrendering their "rights"—indeed an entire "bill of rights"—by approving the Proposed Initiative. Again, the phrase "Taxpayer's Bill of Rights" does no more than invoke the name of the constitutional provision to which the Proposed Initiative is directed. The Proposed Initiative, if passed, would repeal article X, section 20 of the Colorado Constitution in its entirety. That provision is universally known as the Taxpayer's Bill of Rights or TABOR. As a result, using that language in the title properly and impartially explains to voters what the title seeks to achieve.

15

¶31    For these reasons, we conclude that the phrase "Taxpayer's Bill of Rights," as used in the title before us, is not an impermissible catch phrase.

## D. The Abstract

¶32    Finally, we turn to Proponents' contention that the abstract is misleading. Again, we are unpersuaded.

¶33    Under section 1-40-105.5(2)(a), the Title Board is required to "prepare an initial fiscal impact statement" for every initiated measure properly submitted to the Board. This initial fiscal impact statement must include an abstract. § 1-40-105.5(2)(c)(III). The abstract, in turn, must include, as pertinent here:

> (a) An estimate of the effect the measure will have on state and local government revenues, expenditures, taxes, and fiscal liabilities if the measure is enacted;
>
> (b) A statement of the measure's economic benefits for all Coloradans;
>
> (c) An estimate of the amount of any state and local government recurring expenditures or fiscal liabilities if the measure is enacted; [and]
>
> (d) For any initiated measure that modifies the state tax laws, an estimate, if feasible, of the impact to the average taxpayer if the measure is enacted.

§ 1-40-105.5(3).

¶34    The abstract, however, need not contain "hard numbers or other quantitative data" regarding an initiative's expected economic impact when precise estimates of fiscal or other impacts cannot be determined. *In re 2017–2018*

#4, ¶¶ 23–24, 395 P.3d at 324–25. In such situations, we have approved the Board's use of indeterminate qualitative impact statements. *Id.*

¶35   Here, Proponents challenge the portion of the abstract providing:

> The measure is expected to increase revenue and spending for state and local governments over the long term, shifting a portion of the state's economy from the private sector to the public sector. If government spending for public goods and services, including for example health care, education, social services, infrastructure, and public safety, increases, as expected, household and business spending or saving will be correspondingly reduced.

¶36   In Proponents' view, this portion of the abstract is necessarily dependent on fiscal policy decisions that will be made by future lawmakers and voters and that are therefore unknowable. Moreover, Proponents contend that the abstract does not really present the statutorily required "estimate," nor is it supportable by any evidence, testimony, or information. Accordingly, Proponents assert that the abstract amounts to "pure speculation" and is thus misleading and unfair. We disagree.

¶37   As an initial matter, we note that Proponents' argument appears to be directed to the prior version of the abstract, which provided, in pertinent part, "Government spending for public goods and services, including for example health care, education, social services, infrastructure, and public safety, will increase. Household and business spending or saving will be correspondingly reduced." The Title Board, however, amended this version of the abstract to reflect

17

the indeterminacy that Proponents identified in their motion for rehearing before the Board.

¶38 As for the version of the abstract before us, the economic impacts section of that abstract properly sets out the Proposed Initiative's expected impact on government revenue and spending, as well as the economic impact expected to result, as section 1-40-105.5(3)(a) requires. Moreover, the abstract is not deficient, as Proponents contend, because it contains no evidence, testimony, or information. In *In re 2017–2018 #4*, ¶¶ 23–24, 395 P.3d at 324–25, we rejected a similar argument, noting that when the legislative council cannot provide quantitative estimates, indeterminate qualitative impact statements are permissible. The Board has complied with that directive here.

¶39 Accordingly, we conclude that the abstract at issue satisfies the applicable statutory requirements and is not misleading.

## III. Conclusion

¶40 For the foregoing reasons, we conclude that the Proposed Initiative's title and abstract are clear and not misleading, and we further conclude that the phrase "Taxpayer's Bill of Rights," as used in the title before us, is not an impermissible catch phrase.

¶41 Accordingly, we affirm the Title Board's determination.

**JUSTICE MÁRQUEZ** concurs in part and dissents in part, and **JUSTICE BOATRIGHT** joins in the partial concurrence and partial dissent.

18

JUSTICE MÁRQUEZ, concurring in part and dissenting in part.

¶42 The clear title requirement seeks to "prevent voter confusion and ensure that the title adequately expresses the initiative's intended purpose," *In re Title, Ballot Title & Submission Clause for 2015–2016 #156*, 2016 CO 56, ¶ 11, 413 P.3d 151, 153, such that even voters who are not familiar with the subject matter of an initiative can "determine intelligently whether to support or oppose the proposal," *id.* (quoting *In re Title, Ballot Title & Submission Clause for 2015–2016 #73*, 2016 CO 24, ¶ 22, 369 P.3d 565, 568). Partly for the reasons stated in my previous dissent in this matter, *see In re Title, Ballot Title & Submission Clause for 2019–2020 #3*, 2019 CO 57, ¶¶ 41–75, 442 P.3d 867, 873–79 (Márquez, J., dissenting), I would reverse the Title Board's setting of title. As an initial matter, because TABOR contains multiple subjects, the proposed repeal of TABOR necessarily also contains multiple subjects. Consequently, it is not possible for the title of Initiative #3 to convey "a single subject," as article V, section 1(5.5) of our constitution requires. But even putting the single subject problem aside, the title approved by the majority ("An amendment to the Colorado constitution concerning the repeal of the Taxpayer's Bill of Rights (TABOR), Article X, Section 20 of the Colorado constitution.") fails to reflect the "central features" of the measure as our case law requires. Indeed, the title approved by the majority fails to describe *any* of the myriad features of TABOR such that a voter can intelligently determine whether

1

to support or oppose its repeal. Under Colorado's longstanding clear title requirement, any title for the proposed repeal of TABOR should be at least as descriptive as the title presented to voters in 1992 when TABOR was first adopted. Accordingly, I respectfully dissent in part.[1]

¶43 First, I explain how the single subject and clear title requirements are linked by their history and shared purposes. Next, I describe how the majority's approval of this multi-subject initiative in *In re 2019–2020 #3* has led to the present clear title problem. I then explain why the title fails to convey the central features of the initiative to an ordinary voter unfamiliar with its subject in violation of the constitution's clear title requirement. Finally, I offer the title of the 1992 ballot initiative enacting TABOR as a model of an adequate title for its proposed repeal.

### A. The Single Subject and Clear Title Requirements Are Linked by History and Shared Purposes.

¶44 Colorado's constitution forbids submitting to voters a measure lacking a title that "clearly expresses a single subject." Colo. Const. art. V, § 1(5.5) ("If a measure contains more than one subject, such that a ballot title cannot be fixed that

---

[1] I agree with the majority that the phrase "Taxpayer's Bill of Rights" or "TABOR" is not an impermissible catchphrase, maj. op. ¶¶ 2, 25–31, and that the abstract is not misleading, *id.* at ¶¶ 2, 32–39.

clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.").

¶45    As this language makes clear, Colorado's single subject and clear title requirements for initiated measures are linked.  This is no surprise, because they derive from identical, longstanding requirements in our state constitution pertaining to legislative bills.  *See In re Title, Ballot Title & Submission Clause for Proposed Initiative 2001–2002 #43*, 46 P.3d 438, 440 (Colo. 2002) (describing the history of the single subject requirement for bills in the General Assembly and for initiatives).  Since 1876, our constitution has provided that, except for general appropriation bills, "[n]o [legislative] bill . . . shall be passed containing more than one subject, which shall be clearly expressed in its title."  Colo. Const. art. V, § 21.  The single subject and clear title requirements for initiatives both derive from this constitutional requirement for legislation.

¶46    Nearly 130 years ago, we observed that the single subject and clear title requirements for legislative bills serve the dual purposes of informing the public of the content of proposed legislation and preventing the passage of "unknown and alien subjects . . . coiled up in the folds of the bill":

> [Article V, section 21] embraces two mandates . . . one forbidding the union in the same legislative bill of separate and distinct subjects, and the other commanding that the subject treated in the body of the bill shall be clearly expressed in its title.  *Each of these mandates is designed to obviate flagrant evils connected with the adoption of laws.  The former prevents joining in the same act disconnected and incongruous matters.  The*

3

*purpose of the latter is . . . "to give information to the members, or others interested, by the title of the bill, of the contemplated legislation; and thereby to prevent the passage of unknown and alien subjects, which might be coiled up in the folds of the bill."* The provision undoubtedly deals with legislative procedure; but *obedience thereto directly results in advising the people of the contents of bills* that have become laws.

*In re Breene*, 24 P. 3, 3–4 (Colo. 1890) (emphases added) (quoting *Appeal of Dorsey*, 72 Pa. 192, 195 (1872)).

¶47 Over time, Coloradans chose to adopt these same requirements for voter-initiated measures. First, through a referendum in 1910, Colorado amended its constitution to reserve the powers of initiative and referendum to the people. Ch. 3, Colo. Const. art. V, § 1, 1910 Colo. Sess. Laws 11, 11–14. Three years later, in 1913, the General Assembly enacted legislation providing the original clear title requirement for initiatives. Ch. 97, sec. 4, 1913 Colo. Sess. Laws 310, 312 ("Each petition shall designate such ballot-title, which . . . may be enjoined from appearing upon the ballot, if misleading or unreasonably long . . . ."). The title-setting process was amended in 1919 to create a title board and establish judicial review for compliance with the statutory fair-title requirement. Ch. 131, 1919 Colo. Sess. Laws 431, 431–32.

¶48 Thus, when TABOR was passed by Colorado voters in 1992, it was subject to the clear title requirement. Only later—indeed, partly in response to TABOR—did voters enact the single subject requirement for initiatives found in article V, section 1(5.5) of our constitution. *See In re 2019–2020 #3*, ¶¶ 51–54, 442 P.3d at

4

875–76 (Márquez, J., dissenting) (describing the history of the single subject requirement); *In re Title, Ballot Title, & Submission Clause for 2013–2014 #76*, 2014 CO 52, ¶ 31, 333 P.3d 76, 84–85 (same).

¶49    That said, like their counterparts for legislative bills, the single subject and clear title requirements for initiatives serve shared purposes, namely, to (1) inform voters about the subject of a proposed measure and (2) prevent the passage of surprise or surreptitious measures.    *See* § 1-40-106.5(1)(e)(II), C.R.S. (2019) (declaring that article V, section 1(5.5) is intended "[t]o *prevent surreptitious measures* and *apprise the people of the subject* of each measure by the title, that is, to prevent surprise and fraud from being practiced upon voters" (emphases added)); *In re Title, Ballot Title & Submission Clause for 2009–2010 #45*, 234 P.3d 642, 648 (Colo. 2010) ("The purpose of reviewing an initiative title for clarity parallels that of the single subject requirement: voter protection through reasonably ascertainable expression of the initiative's purpose.").

¶50    To safeguard these purposes, this court has required an initiative's title to provide enough information that a voter, "whether familiar or unfamiliar with the subject matter of a particular proposal, [can] determine intelligently whether to support or oppose such a proposal." *In re Title, Ballot Title & Submission Clause for 2013–2014 #90*, 2014 CO 63, ¶ 23, 328 P.3d 155, 162; *see also* maj. op. ¶¶ 15, 18. Importantly, although an initiative's title need not describe every feature of the

5

measure, it must convey its "central features."  Maj. op. ¶ 16; *In re Proposed Initiative for an Amendment to Article XVI, Section 6, Colo. Const., Entitled "W.A.T.E.R."*, 875 P.2d 861, 864 (Colo. 1994) ("[T]he Board's language must 'clearly and concisely reflect the central features of a proposed initiative.'" (quoting *In re Proposed Initiated Constitutional Amendment Concerning Ltd. Gaming in the Town of Idaho Springs*, 830 P.2d 963, 970 (Colo. 1992))); *see also In re Title, Ballot Title & Submission Clause, & Summary for "Petitions"*, 907 P.2d 586, 590 (Colo. 1995) ("The language employed by the Board will be rejected where such language is misleading, inaccurate, *or fails to reflect the central features of the proposed initiative*." (emphasis added)).

## B.  The Title's Core Flaw Stems from the Initiative's Multiple Subjects.

¶51    Because TABOR contains multiple subjects, and because Initiative #3 seeks to repeal all of TABOR, no title can be drafted for this initiative "clearly express[ing] a *single* subject" as required by our constitution.  Colo. Const. art. V, § 1(5.5) (emphasis added).

¶52    We have acknowledged on several occasions that TABOR contains multiple subjects.  *In re 2019–2020 #3*, ¶ 31, 442 P.3d at 872 (majority opinion) (noting "the multiple subjects enacted by TABOR"); *In re 2013–2014 #76*, ¶ 31, 333 P.3d at 85 (calling TABOR a "multiple subject measure"); *In re Title, Ballot Title & Submission Clause, & Summary with Regard to Amend Tabor 25*, 900 P.2d 121, 126 (Colo. 1995)

6

(noting that TABOR "contains multiple subjects"). These multiple subjects include voter approval of tax increases and debt; state and local government spending limits; local revenue limits; prohibited taxes; taxpayer refunds; emergency taxes and emergency reserves; election procedures and required ballot information; state mandates; and requirements related to the assessment of property. *In re 2019–2020 #3*, ¶¶ 47–50, 442 P.3d at 874–75 (Márquez, J., dissenting) (describing TABOR's multiple subjects).

¶53 Despite acknowledging that TABOR contains multiple subjects, the majority concluded in *In re 2019–2020 #3* that the proposed repeal of this complex provision constitutes a single subject. I have already explained why I disagreed with that decision. *Id.* at ¶¶ 41–75, 442 P.3d at 873–79. In short, lumping several subjects under a single label ("TABOR") and packaging the proposal as a *repeal* does not transform the proposal into a single subject. *Id.* at ¶ 67, 442 P.3d at 878; *see also In re Title, Ballot Title, & Submission Clause for 2009–2010 #91*, 235 P.3d 1071, 1076 (Colo. 2010) ("[An] attempt to characterize an initiative under some general theme will not save an initiative from violating the single subject rule if the initiative contains multiple subjects."). The problem now, of course, is that because the repeal of TABOR encompasses numerous subjects affecting several areas of law at the state and local levels, it is impossible to draft a title for this repeal that "clearly

7

expresses a single subject" as the constitution requires. *See* Colo. Const. art. V, § 1(5.5).

## C. The Title as Drafted Wholly Fails to Communicate TABOR's Central Features.

¶54 As a result of the majority's earlier decision in this matter, the Title Board was required to draft a title that conveys to voters what the proposed repeal would accomplish. I do not envy the Title Board's situation. Indeed, in a case decided before voters passed the single subject requirement, we acknowledged the Title Board's "arduous task of summarizing both efficiently and sufficiently the essential purport of sometimes prolix proposals." *In re Proposed Initiative Concerning State Pers. Sys.*, 691 P.2d 1121, 1123 (Colo. 1984). Yet even putting aside the single subject problem discussed above, the title blessed by the majority today fails to satisfy the clear title requirement because it does nothing to inform voters what TABOR is or describe the "rights" that would be repealed.

¶55 The clarity of a title must be judged from the perspective of an ordinary voter. *In re 2009–2010 #45*, 234 P.3d at 647–48. How can ordinary voters, particularly those unfamiliar with TABOR, be empowered to "determine intelligently whether to support or oppose" the initiative knowing only that it concerns the repeal of something called TABOR? They cannot. To such voters, the title essentially reads, "An amendment to the Colorado constitution

8

concerning the repeal of [some provision] of the Colorado constitution." It is difficult to imagine a less informative title.

¶56 The majority acknowledges the correct standard, maj. op. ¶ 15, but fails to apply it. Instead, the majority appears to assume voter familiarity with TABOR's myriad subjects and approves the title because it is not confusing. Maj. op. ¶ 18 ("[W]e cannot discern how voters could be confused by this title or how the effect of a yes/for or no/against vote would be unclear."). But this misses the point. It is not enough that a title avoid actively misleading voters—the constitution affirmatively requires the title to communicate the substance of the measure. *See* § 1-40-106.5(1)(e)(II) (stating a purpose of article V, section 1(5.5) is to "apprise the people of the subject of each measure by the title"); *In re 2013–2014 #90*, ¶ 23, 328 P.3d at 162 (noting title must enable voters to "determine intelligently whether to support or oppose [the] proposal").

¶57 The majority also emphasizes that a title need not describe "every feature" in approving the proposed title. Maj. op. ¶¶ 20–21. True. But the problem is that the title approved by the majority fails to communicate *any* feature of TABOR, let alone TABOR's "central features" as our case law requires. *See In re Title, Ballot Title & Submission Clause, & Summary for Proposed Initiated Constitutional Amendment Concerning Suits Against Nongovernmental Emp'rs Who Knowingly & Recklessly Maintain an Unsafe Work Env't*, 898 P.2d 1071, 1073 (Colo. 1995) ("The

9

Board's duty is merely to summarize the central features . . . ."); *In re Proposed Initiative Entitled "W.A.T.E.R."*, 875 P.2d at 864 (noting the title must communicate the initiative's "central features"); *In re Ltd. Gaming*, 830 P.2d at 966 ("This court's primary function is *to ensure that the documents prepared by the Board* fairly, accurately and concisely *reflect the central features* of the initiated measure." (emphases added)).

¶58 To the extent the majority reasons that "[p]icking and choosing" among TABOR's multiple features would lead to problems or voter confusion, maj. op. ¶ 21, its argument simply highlights that the measure contains multiple subjects — so many, apparently, that it is not possible (according to the majority) to concisely convey all its features in the title, *see id.*

¶59 I fear that after weakening our single subject jurisprudence, the majority now also weakens the clear title requirement. The example I used in my past dissent is again apt: there, I noted that under the majority's logic voters could repeal the entire Bill of Rights of our state constitution through a single initiative merely by packaging the measure as a "repeal." *In re 2019–2020 #3*, ¶ 74, 442 P.3d at 879 (Márquez, J., dissenting). Under the majority's ruling today, instead of requiring the title of such a measure to inform voters that the repeal would affect "religious freedom, free speech, protections against unreasonable searches and seizures, the right to bear arms, the prohibition against cruel and unusual

10

punishment, and due process, among [others]," *id.*, the title could simply read "An amendment to the Colorado constitution concerning the repeal of [the Bill of Rights, Article II] of the Colorado constitution." In my view, such a title fails to inform voters unfamiliar with the Bill of Rights of the consequences of their vote in violation of the constitution. That cannot be what voters intended in article V, section 1(5.5) when they required a clear title expressing a single subject.

### D. The Title of TABOR's Repeal Should Be At Least As Descriptive As the Title Presented to Voters When TABOR Was Enacted.

¶60 Although we defer to the Title Board's drafting authority, *In re 2009–2010 #45*, 234 P.3d at 648 (noting we will reverse the Title Board only if the title is "insufficient, unfair, or misleading"), and will not rewrite an inadequate title, *In re Title, Ballot Title, & Submission Clause for 2007–2008 #62*, 184 P.3d 52, 58 (Colo. 2008), it seems clear that the title here should be at least as descriptive as the title provided to voters in 1992 when TABOR was first enacted by voters.

¶61 That title provided much more detail to voters about TABOR's central features:

> An amendment to the Colorado Constitution to require voter approval for certain state and local government tax revenue increases and debt; to restrict property, income, and other taxes; to limit the rate of increase in state and local government spending; to allow additional initiative and referendum elections; and to provide for the mailing of information to registered voters.

11

Legislative Council, Colo. Gen. Assembly, Research Pub. No. 369, *An Analysis of 1992 Ballot Proposals* 5 (1992).  The title presented to voters in 1992 was, of course, subject to the century-old clear title requirement at issue here.  Yet it informed voters of TABOR's substance in a way that the title approved by the majority today does not.  I would reverse the setting of title and remand to the Title Board to draft a title communicating the central features of the repeal, pointing to the 1992 title as a guide.

## E.  Conclusion

¶62    In my earlier dissent, I expressed concern that the majority weakened our single subject jurisprudence.  *In re 2019–2020 #3*, ¶¶ 41–75, 442 P.3d at 873–79 (Márquez, J., dissenting).  Today, I fear the majority also weakens the clear title requirement.  Because the title approved by the majority fails to meaningfully convey any of the central features of TABOR that would be repealed by Initiative #3, I respectfully dissent.

I am authorized to state that JUSTICE BOATRIGHT joins in this partial concurrence and partial dissent.

12